1  FITCH, EVEN, TABIN & FLANNERY
   Jon A. Birmingham (California Bar No. 271034)
2  Warner Center Towers
3  21700 Oxnard Street, Suite 1740
   Woodland Hills, CA  91367
4  Telephone:  (818) 715-7025
   Facsimile:  (818) 715-7033
5  Email:  jbirmi@fitcheven.com

6  FITCH, EVEN, TABIN & FLANNERY
7  Edward W. Gray, Jr. (California Bar No. 80996)
   One Lafayette Centre, NW
8  Washington, DC  20036
   Telephone:  (202) 419-7000
9  Facsimile:  (202) 419-7007
10 Email:  egray@fitcheven.com

11 Attorneys for Plaintiffs

12              IN THE UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15 | BRIDGETREE, INC., and | Case No. 3:10-MC-80304-VRW
   | TWO BIT DOG, LLC,      |
16 |                        | **DECLARATION OF MARK A. BORSOS**

17           Plaintiffs,

18                 vs.

19
20 RED F MARKETING LLC;
   TARGET POINT, LLC,
21 DANIEL ROSELLI;
   TENG LI;
22 JASON LI;
   MALI XU;
23 MARK EPPERLY; and
   ELTON T. SCRIPTER.
24
25           Defendants.

26

27       I, Mark A. Borsos, hereby declare under penalty of perjury that the following statements are true

28 and correct:

1     1.   I am one of the attorneys for the Plaintiffs Bridgetree, Inc. and Two Bit Dog, LLC

2 ("Bridgetree") in the above-captioned lawsuit pending in the Western District of North Carolina. A true

3 and accurate copy of the complaint filed in the Western District of North Carolina is attached hereto as

4 Ex. 1.

5

6     2.   On October 22, 2010, I sent Bridgetree's First Set of Requests for the Production of

7 Documents and Things to Defendant Scripter's counsel. A true and accurate copy of those Requests is

8 attached hereto as Exhibit 2.

9     3.  On November 17, 2010, my firm caused a subpoena to be served on Google, Inc. Google, Inc.

10 served objections to the subpoena on December 1, 2010. True and accurate copies of these documents

11 are attached hereto as Exhibit 3.

12

13    4.  On November 17, 2010, my firm caused a subpoena to be served on Facebook, Inc. Facebook,

14 Inc. served objections to the subpoena on November 23, 2010. True and accurate copies of these

15 documents are attached hereto as Exhibit 4.

16    5.  On November 17, 2010, my firm caused a subpoena to be served on LinkedIn Corp. LinkedIn

17 Corp. served objections to the subpoena on December 3, 2010. True and accurate copies of these

18 documents are attached hereto as Exhibit 5.

19

20    6.  On November 17, 2010, my firm caused a subpoena to be served on Yahoo! Inc. Yahoo! Inc.

21 served objections to the subpoena on November 23, 2101. True and accurate copies of these documents

22 are attached hereto as Exhibit 6.

23    7.  On December 20, 2010, I participated in a teleconference with counsel for Defendants. In that

24 teleconference, we discussed the outstanding subpoenas for third party documents and counsel's

25 concerns regarding their scope, including the potential for production of documents covered by the

26 attorney-client privilege and potentially irrelevant documents.

27

28

8. During the teleconference, I proposed that the production of the above third parties be made to Defendants' counsel. I sent letters to the counsel for the Defendants on December 21, 2010 outlining this proposed procedure. True and accurate copies of those letters are attached hereto as Exhibit 7. Scripter's counsel flatly rejected this proposal. I then responded in a further attempt to obtain Scripter's consent and establish reasonable procedures for handling the documents sought through the subpoena. True and accurate copies of those letters are attached hereto as Exhibit 8. Counsel for Li, Roselli, and Epperly responded by e-mail to my December 21, 2010 letter on December 23, 2010 indicating that they would cooperate in reaching an understanding of what is to occur with respect to social media communications. I followed up on this communication by e-mail on January 5, 2011. True and accurate copies of these e-mails are attached hereto as Exhibit 9.

9. I have also reviewed some of the documents received from other Defendants in this case. One Defendant, Red F Marketing LLC, recently produced approximately 4,000 pages of documents to Bridgetree. Upon review of that production, and upon cross-referencing to Defendant Scripter's production (which consists of .pdf images and is not readily machine-searchable) it appears that at least some emails to and from private e-mail accounts of Defendant Scripter that do not appear to have been previously produced by Defendant Scripter have been produced by Red F.

January 6, 2011

DECLARATION OF MARK A. BORSOS - CASE NO. 3:10-MC-80304-VRW

# Ex. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRIDGETREE, INC., a South Carolina company, and TWO BIT DOG, LLC, a South Carolina limited liability company,<br><br>    Plaintiffs<br><br>v.<br><br>RED F MARKETING LLC, a North Carolina limited liability company; TARGET POINT, LLC a North Carolina limited liability company; DANIEL ROSELLI, an individual; TENG LI, an individual; JASON LI, an individual; MALI XU, an individual; MARK EPPERLY, an individual; and ELTON T. SCRIPTER, an individual,<br><br>    Defendants. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1.    Plaintiffs Bridgetree, Inc ("Bridgetree") and Two Bit Dog, LLC ("Two Bit Dog"), a Bridgetree affiliate, bring this Complaint to seek redress for Defendants' data theft, trade secret misappropriation, unlawful access to Bridgetree's computers, and unfair competition.

2.    As part of their conspiracy to defraud Plaintiffs and raid Bridgetree's trade secrets, employees, other competitive information and data in order to unlawfully establish a competing enterprise, Defendants violated, among other things, the North Carolina Trade Secrets Protection Act, the Racketeer Influenced and Corrupt

Organizations Act, the Computer Fraud and Abuse Act, and the Digital Millennium
Copyright Act.

3.   At least as early as the summer of 2009, Defendants entered into a conspiracy to
raid certain of Bridgetree's key personnel, confidential information, and trade secrets.
This case arises from the overt and covert acts in furtherance of the attempts of
Defendants RED F Marketing, LLC ("RED F") and Target Point, LLC ("Target Point")
to unlawfully and improperly compete with Plaintiff Bridgetree's business by, *inter alia*,
recruiting Bridgetree's former Vice President, Chief Technical Officer, and Chief of
Privacy and Security, Defendant Teng Li, and the unlawful misappropriation of various
Bridgetree trade secrets and confidential information upon Teng's abrupt departure from
Bridgetree. Prior to January 2010, did not offer and had no ability to offer services in
competition with Bridgetree.   However, Defendants raided Bridgetree to obtain the trade
secrets and know-how they did not have the time or resources to develop themselves, and
which Bridgetree had spent millions of dollars and more than a decade to develop.

4.   In January 2010, Defendants RED F, Target Point, Daniel Roselli ("Roselli"),
Mark Epperly ("Epperly"), and Teng Li (collectively "RED F Defendants") revealed for
the first time their intention to become a competing concern, using Bridgetree's
employees and trade secrets, in order specifically to capitalize on a time sensitive
opportunity to secure work from Bridgetree clients including IBM.

5.   On January 1, 2010, the RED F Defendants, including Teng Li, then a key
Bridgetree employee, met with Defendant Elton Scripter ("Scripter"), an IBM employee,
at a local Charlotte restaurant to pursue a "partnership" between the co-conspirators to

win an important IBM project.  They planned to win this project using non-public IBM

information provided by Scripter and stolen services and know-how from Bridgetree.

6.   On January 4, 2010, Teng Li resigned his senior management position with

Bridgetree as Bridgetree's Vice President, Chief Technical Officer, and Chief of Privacy

and Security, effective the next day, to join RED F as an employee.  The same day that

Teng Li gave his notice to Bridgetree, January 4th, a substantial portion of Bridgetree's

key personnel in Xian, China resigned from Bridgetree to join a newly formed RED F

operation in Xian, China, headed by Teng Li.

7.   Using Bridgetree's valuable trade secrets and confidential information, the RED F

Defendants almost immediately were able to become a competing concern, as their

business interests now involve offering services in direct competition with Bridgetree.

8.   Since January 4, 2010, Bridgetree has conducted an extensive forensic computer

investigation.  Based upon this investigation, Plaintiffs have established that RED F's

operations in Xian, China were at all relevant times directed by Teng Li and RED F from

North Carolina.  This operation employed and relied upon Bridgetree technical talent,

trade secrets, confidential information and other Bridgetree property without the

authorization, approval, knowledge or acquiescence of Bridgetree.  The investigation

shows that numerous emails and computer files belonging to Bridgetree were deleted

from Teng Li's and his Xian subordinate, Jason Li's, Bridgetree-owned computers.

These deletions started at least as early as Teng Li's resignation notice on January 4,

2010, and continuing at least until Teng Li belatedly returned his Bridgetree-owned

computers to Bridgetree on January 7th, more than two (2) days after Teng Li's

resignation from Bridgetree.  In addition to the above deletions, Defendant Teng Li and

3

Xian-based Defendant Jason Li apparently copied a vast amount of proprietary

Bridgetree data and trade secrets between January 4th and January 10th. Bridgetree trade

secrets were used by Defendants to establish their Xian, China operation and to provide

services in the United States which Defendants were unable to provide prior to the arrival

of the former Bridgetree employees with stolen Bridgetree know-how and trade secrets.

## PARTIES

### Plaintiffs

9.      Bridgetree is a privately held corporation. It was chartered in North Carolina in

1995 and relocated as a South Carolina corporation in 2009. Bridgetree is substantially

owned and controlled by Mark Beck, who serves as the Chief Executive Officer of

Bridgetree.

10.     Bridgetree provides marketing data, information, analytics and logistics services

to many important U.S.-based consumer, retail and business marketers. Such marketing

data, information, analytics and logistics services are used by Bridgetree's customers to

develop information to achieve better sales results; improve marketing research;

modeling; response analysis; forecast consumer purchasing behavior; database

construction and maintenance; data gathering, scoring and variable coding for message

production; web programming; website and data hosting and maintenance; and on-

demand marketing and printing systems.

11.     In 2000, Bridgetree started operations in Kolkata, India, and in 2007, Bridgetree

opened a facility in Xian, China.

12.     Two Bit Dog is a limited liability company that was chartered in North Carolina

in 1998. In January 2010, Two Bit Dog relocated to South Carolina and became a South

Carolina limited liability company. Defendant Teng Li is one of two members of Two Bit Dog.

### Defendants

13.    RED F, a North Carolina limited liability company, and has in the past operated primarily an advertising agency.

14.    Daniel Roselli is the President of RED F and resides at 2611 Whitney Hill Road, Charlotte, North Carolina 28226.

15.    Teng Li is presently the Chief Technology Officer and Managing Director of RED F. Until January 4, 2010, Teng Li was a senior executive and key Bridgetree employee. Teng Li resides at 12406 Aden Creek Way, Pineville, North Carolina.

16.    Jason Li is Bridgetree Xian's former Team Leader and Chinese citizen. As Team Leader, Jason Li supervised all work performed at Bridgetree Xian. Jason Li reported directly to Defendant Teng Li.

17.    Mali Xu is Bridgetree Xian's former bookkeeper and office manager and Chinese citizen.

18.    Mark Epperly was the Vice President at Vision Marketing until he recently became the President of Target Point. Epperly was previously employed by Bridgetree as a Business Development Manager from 2004 to 2007. Epperly resides at 6917 Club Champion Lane, Mint Hill, North Carolina.

19.    Target Point is a North Carolina limited liability company. Target Point was formed by RED F, Roselli, and Epperly to provide another vehicle through which RED F could offer services competitive to Bridgetree. Defendants formed Target Point using Bridgetree's employees and confidential, proprietary and trade secret information.

20.   Elton T. Scripter is Advanced Analytics and Optimization Manager of IBM Business Service.  Defendant Scripter was previously employed by Bridgetree as a Data Logistics Specialist from 2003 to 2004.  Upon information and belief, Scripter's residence is in Charlotte, North Carolina.  Scripter's employment address is 8501 IBM Drive, Charlotte, North Carolina 28262-4333.

## JURISDICTION AND VENUE

21.   This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 1203(a), 18 U.S.C. §§ 1964(a) and 1964(c), and 28 U.S.C. §§ 1331 and 1367.

22.   This Court has personal jurisdiction over Defendants consistent with the U.S. Constitution and N.C. Gen Stat. § 1-75.4 because, on information and belief, Defendants are present in this State, regularly and actively conduct business in this State and judicial district, have sufficient minimum contacts with this State, and are subject to the jurisdiction of the Court.

23.   Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS COMMON TO ALL COUNTS

### Bridgetree's Trade Secrets

24.   There are multiple kinds of Bridgetree trade secret information which have been stolen by Defendants, specifically including: (1) Pre-mover services know-how and software; (2) print marketing on-demand services know-how; (3) Proprietary information related to Bridgetree customer needs and industries; and (4) information related to how Bridgetree's overseas operations are organized to work with Bridgetree's U.S. operations. Each of these four (4) bundles of Bridgetree trade secret information will be more fully

described below.  In addition, Defendants have used non-public information regarding

the identities and skills of Bridgetree employees and its client list to which trade secret

protection applies under applicable law,

25.    Bridgetree's business is based in the United States and is supported by offices in

India and China.  Bridgetree has spent considerable amounts of time, money and effort in

developing its services.  The methods by which Bridgetree develops and provides these

services are highly confidential and are not generally known outside of Bridgetree or its

affiliates.  In particular, Bridgetree has invested substantial time and money in developing

its foreign offices and its pre-mover and print marketing on-demand services to meet its

customers' particular needs.  Bridgetree takes reasonable steps to preserve the

confidentiality of its sensitive information, and has a written security policy and security

procedures to protect such sensitive, confidential and trade secret information from

disclosure.

### Bridgetree's Pre-Mover Services

26.    It is well-known that large numbers of Americans change their residences each

year.  "Pre-movers" are individuals or households that have been identified as likely to

change residences within a relatively short term.  Certain purchase behaviors such as

home, entertainment, furniture and appliance purchases and other lifestyle changes such

as new employment, divorce and marriage are to varying degrees correlated with

residence change decisions.  Businesses, such as Bridgetree, use various methods to

identify pre-movers and compile such information into a usable format ("pre-mover

data").  Retailers, marketers and other customers of businesses such as Bridgetree and

RED F use pre-mover data to send targeted direct mail or email and other solicitations to

such pre-movers.  The greater the accuracy and timeliness of the pre-mover data, the
more valuable it is.

27.    Bridgetree has a sophisticated, proprietary system that was developed and
refined through trial and error over a ten year time period for acquiring, updating and
distributing its pre-mover data.  This system constitutes a Bridgetree trade secret and has
given Bridgetree a marketplace advantage over its competitors.  The methods that
Bridgetree developed and uses are not generally known in the industry, and could not
independently be developed by a potential competitor without great expense, and
substantial research and development requiring years of effort..

28.    Bridgetree supported its pre-mover business using employees and software in
the United States and Bridgetree's Xian office.  Bridgetree employees in the Xian office
were the keepers of the source code integral to Bridgetree's pre-mover software
capabilities.

### Bridgetree's Print Marketing On-Demand Services

29.    Marketers desire to send print marketing materials targeted to specific
customers rather than untargeted mass mailings.  Typically, the marketer will develop
print marketing materials and take the copy along with a list of their targeted customers
to a printer to be printed.  This requires the marketer to work with the printer to
customize the marketing materials for each targeted customer.  This process takes time,
money and is particular to each printer; thus the marketer is wed to a specific printer for
each marketing campaign.

30.    Bridgetree has developed a custom print marketing on-demand system whereby
its clients can select certain parameters from a database of the client's target customers to
meet their marketing objectives.  Bridgetree's system then merges the target customer's

information into the marketing materials to produce a ready to print file in a format that can be loaded into any printer's machines without the printer having to manipulate the file. Bridgetree's system enables marketers to switch printers and formats with little cost. This effectively turns printing into a commodity whereby marketers are able to substantially lower their printing costs and increase quality through competition among printers. Bridgetree's print marketing on-demand system also can generate finished materials for email and telephone marketing campaigns in much the same way, providing similar benefits to its clients.

31.  Bridgetree's print marketing on-demand system was developed and refined through trial and error over a number of years, drawing upon Beck's unique knowledge of both the printing business and electronic data business. This system constitutes a Bridgetree trade secret and has given Bridgetree a marketplace advantage over its competitors. The methods that Bridgetree developed and uses are not generally known in the industry, and could not independently be developed by a potential competitor without great expense, and substantial research and development requiring years of effort..

32.  Bridgetree supported its print marketing on-demand system using employees and software in the United States and Bridgetree's Xian office.

### Bridgetree's Confidential Customer, Employee and Vendor Information

33.  Bridgetree does not publicly disclose the names of its customers, employees or vendor identities; scope and details of work performed for its customers; or other customer information such as marketing objectives and competitive advantages. Over a number of years, Bridgetree has acquired valuable information regarding the particular requirements of its customers and their industries and how to best meet these

requirements.  Bridgetree's knowledge of such customer requirements is not generally known in the industry and constitutes a Bridgetree trade secret which gives Bridgetree a marketplace advantage over its competitors. Such information could not independently be developed by a potential competitor without great expense, and substantial research and development requiring years of effort..

### Bridgetree's Foreign Operations

34.   In 2000, Bridgetree started operations in Kolkata, India.  Through substantial cost and effort, Bridgetree developed processes and procedures to make its Kolkata operation successful and fully integrated with its U.S.-based operations and to seamlessly service its U.S. customers ("Integration Procedures").  The Integration Procedures developed by Bridgetree are not generally known or readily ascertainable.  These confidential processes and procedures constitute a Bridgetree trade secret.

35.   In 2007, Bridgetree opened a facility in Xian, China ("Bridgetree Xian") to support its U.S.-based operations using its Integration Procedures.  The Integration Procedures allowed Bridgetree to expedite the opening and profitability of Bridgetree Xian.  From 2007 until his departure to RED F, Defendant Teng Li directed the Bridgetree Xian operations.

### Bridgetree's Copyright-Protected Works and Technological Measures to Prevent Unauthorized Access

36.   The National Consumer Database is the largest, most comprehensive marketing database in the U.S., and is a key component to Bridgetree's pre-mover system.

37.   Bridgetree pays substantial licensing fees for access to data in the National Consumer Database, which data is not freely available otherwise.

38.    Bridgetree takes the data received from the National Consumer Database and analyzes, edits and adds to the data, thus creating its own custom version of the database ("Bridgetree National Database").

39.    The Bridgetree National Database resides on a server hosted by a third party.  A small, designated number of Bridgetree employees can access the Bridgetree National Database data, which is accomplished in two ways.  One means of access is through a custom web interface designed by Bridgetree.  The second is by logging directly onto the third party server and bypassing Bridgetree's interface.

40.    Both methods of access to the Bridgetree National Database require the user to enter a valid username and password to log onto the respective system.  Moreover, each system maintains a log documenting each entry into the system by username.

### Teng Li and Jason Li at Bridgetree

41.    Upon information and belief, Defendant Teng Li is an American citizen who holds a Ph.D. in statistics from the University of Maryland Baltimore County.  Teng Li was hired by Bridgetree in 2003 as head of security.  In 2005, Teng Li was promoted to Vice President, Web and Data Systems.  In June 2009, Teng Li became Bridgetree's Vice President, Chief Technical Officer, and Chief of Privacy and Security.

42.    As Bridgetree's Vice President, Chief Technical Officer, and Chief of Privacy and Security, Defendant Teng Li had substantial dominion and control over Bridgetree's operations and had access to Bridgetree's trade secrets.  Beck was the only person senior to Teng Li at Bridgetree.  He relied on Teng Li's technical expertise and placed trust and confidence in Teng Li's abilities.

43.    In 2009, and in other years, Teng Li was the highest paid Bridgetree employee apart from Beck.  It was well known within and outside Bridgetree that Teng Li was the heir apparent to Beck in control of the day to day operation of the business.  In fact, there was a procedure for transferring complete control over Bridgetree's operations to Teng Li in the event of Beck's incapacity.

44.    Teng Li routinely made and independently executed significant decisions important to Bridgetree's business.  For example, Teng Li was able, without securing advance approval from Beck, to assign or move key Bridgetree employees to or from particular projects including Bridgetree's pre-mover activities.

45.    As Bridgetree's Chief Technical Officer, Teng Li, in the course and scope of his employment with and on behalf of Bridgetree, was the main architect of Bridgetree's technical and communications infrastructure.  Teng Li controlled all of Bridgetree's information technology systems.  In addition to Mark Beck, Teng Li was the only Bridgetree employee with full and complete access to all of Bridgetree's information and information technology, including but not limited to, Bridgetree's passwords, business methods, hardware configuration, custom applications, customer lists, and operating information.

46.    Teng Li designed Bridgetree's information technology system so that Bridgetree employee emails and Bridgetree confidential and trade secret data were maintained on Bridgetree employees' company-owned personal computers, not on a centralized server.  Further, Teng Li designed the system such that the information on the company-owned personal computers was not routinely backed up on other computers.  Thus, for a given employee of Bridgetree, the individual employee's laptop computer was the sole source

of much of their Bridgetree data and email.  Bridgetree's servers contained databases, but many of the executable programs resided on individual computers.

47.    As Chief of Privacy and Security, Teng Li was responsible for developing and implementing Bridgetree's security policy.  For example, Teng Li created the security policies that required Bridgetree employees to have need-to-know access to Bridgetree servers and files.  Teng Li was responsible for conducting security audits and implementing security procedures as required by law and Bridgetree's customers.

48.    Teng Li owed a legal duty to Bridgetree to keep confidential, and not to use or disclose, Bridgetree's confidential, proprietary and trade secret information and data outside of Bridgetree's business.  This information and data included the requirements of Bridgetree's customers, the identity and employment particulars of Bridgetree's employees, Bridgetree's passwords, business methods, hardware configuration, custom applications, customer lists, customer requirements and operating information. Particularly, Teng Li knew the value and confidential nature of Bridgetree's pre-mover services and print marketing on-demand services.  Teng Li further knew which Bridgetree employees were responsible for maintaining these systems and had access to the pre-mover and print marketing on-demand source code and technical components.

49.    Jason Li was hired by Bridgetree Xian in June 2007 as Team Leader in Bridgetree Xian.  As Team Leader, Jason Li supervised all work performed at Bridgetree Xian.  Jason Li reported directly to Defendant Teng Li.

**Defendants' Unlawful Activities**

50.    Prior to January 2010, RED F did not offer data mining, pre-mover or print marketing on-demand services that competed with Bridgetree, and RED F had no

facilities in China.  Envious of Bridgetree's success and unable or unwilling to lawfully

develop a competing business without misappropriating Bridgetree's assets, Defendants

conspired to raid certain of Bridgetree's key personnel, confidential information and trade

secrets.

51.    Although the precise dates are presently unknown, upon information and belief,

the conspiracy and planning for the raid began at least as early as mid to late 2009.  On

August 24, 2009, Articles of Incorporation for the RED F affiliate, Target Point, were

filed with the State of North Carolina.  That same date, Epperly contacted Mark Beck to

arrange a meeting among Epperly, Beck, and Roselli.  As a former Bridgetree sales

person, Epperly was aware of the value of Bridgetree's capabilities and key personnel.  In

addition, until recently, Epperly was a Vice President and sales executive for Vision

Marketing.  Vision Marketing was a Bridgetree licensee and re-seller of Bridgetree's pre-

mover data.  As such, and subject to confidentiality obligations, Vision Marketing had

limited access to certain confidential aspects of Bridgetree's trade secret pre-mover

program.  After the raid, Vision Marketing ceased to be a Bridgetree customer, ostensibly

because they no longer had a need for Bridgetree's pre-mover data.

52.    On August 28, 2009, Beck, Roselli, and Epperly met over lunch at Bricktops, a

Charlotte, North Carolina restaurant.  At this lunch, the parties discussed the general

nature of their businesses, including Bridgetree's pre-mover and print marketing on-

demand capabilities, with the understanding, at least to Beck, that the parties might be

able to work collaboratively in the future.  Beck did not knowingly disclose any of

Bridgetree's confidential information or trade secrets at this lunch meeting.  Upon

information and belief, the real, and undisclosed, purpose of this meeting was for Roselli

and Epperly, in furtherance of their conspiracy, to gain information about Bridgetree's

operations and to assist with their new venture, Target Point, which they planned to use

to compete with Bridgetree. At no time did Epperly or Roselli advise Beck that they

planned to offer pre-mover or print marketing on-demand services in competition with

Bridgetree.

53.   Upon information and belief, later in August or September 2009, Epperly set up

a golf meeting between Defendants Roselli and Teng Li.

54.   In the last quarter of 2009, Teng Li uncharacteristically began to miss customer

deadlines and neglected his duties at Bridgetree and at Two Bit Dog.

55.   On November 17, 2009, Teng Li met with RED F's CEO, Sara Garces, to

discuss the work he would do for RED F, and the market value of such work.

56.   Upon information and belief, Roselli and Epperly thereafter told Teng Li that

IBM had a substantial need for services that RED F might provide if Teng Li could help

RED F in performing those services. Defendant Scripter, who had known Teng Li since

Scripter's previous employment at Bridgetree, had recently joined IBM. Upon

information and belief, Scripter's IBM duties included making recommendations to

vendors to work with IBM and its customers. At that time, IBM was seeking competitive

bids for services of the type provided by Bridgetree. Defendants knew that RED F and

Target Point had no current capability to win the IBM work, and that to compete for the

IBM business, Bridgetree trade secrets and Xian resources were needed. Also, Teng Li

was needed to ensure RED F's ability to lure top Bridgetree Xian employees to establish

RED F's Xian, China office, which would thereby provide technical knowhow missing

from RED F.

57.   On January 1, 2010, Roselli, Epperly, Scripter, and Teng Li met secretly at a restaurant in Charlotte, North Carolina to discuss how to prepare a winning bid to IBM for the work on which Teng Li and the Xian personnel were essential.  At that meeting, all these individuals discussed their "partnership" and how to conceal the "partners'" identities and relationship while discussing the potential work with IBM officials other than Scripter.  In addition, Scripter knowingly and deliberately revealed to the "partners" the specific firms that were competing with RED F for the work from IBM.  Notably, to conceal his deception, Scripter did not use his IBM email account to disclose this information, rather, a private Google Gmail email account was used.  This information was useful to Defendants because it enabled the "partners" to differentiate RED F's offering from the competition and enabled Teng Li to know which of Bridgetree's property and Xian personnel to raid.  The RED F Defendants would not have had this information without Scripter's improper disclosure of confidential IBM information to the other Defendants.

58.   The result of this meeting and Scripter's improper disclosure of the IBM bid information to the RED F Defendants was that the Defendants learned they had to act immediately to create new capabilities at RED F and Target Point to be successful in winning and performing the IBM project they sought.  Teng Li conspired with the others in their plan to raid Bridgetree's trade secrets and personnel.

59.   As a result, while still employed by Bridgetree and using Bridgetree's confidential information, Teng Li actively recruited Bridgetree Xian employees to join RED F.  RED F did not have access to the identity of the Bridgetree Xian employees or other Chinese individuals with comparable skill sets without Teng Li's disclosure of

Bridgetree's confidential information.  Moreover, to induce them the join RED F, Teng Li and others under his supervision and control, upon information and belief, falsely communicated to Bridgetree Xian employees that Bridgetree Xian was closing, thus causing them to believe that they could not remain employed by Bridgetree.

60.    On January 4th at 8:47 a.m., Eastern Standard Time (which corresponded to approximately 9:47 p.m. Xian time on January 4th), Teng Li called Beck and resigned from Bridgetree.  Teng Li stated that he would work through the business day of January 5th and thereafter he would consult for Bridgetree for a consulting rate of $150 per hour.

61.    Although Teng Li resigned from Bridgetree on January 4, 2010, he wrongfully retained certain Bridgetree property provided to him by the company during his employment, including two laptop computers.  These laptop computers were used in interstate commerce and contained Bridgetree confidential and trade secret information used in interstate commerce pertaining to Bridgetree and Bridgetree Xian.

62.    Beginning on January 4th, Teng Li connected multiple electronic storage devices to his laptop and accessed many Bridgetree project folders containing Bridgetree confidential, trade secret, proprietary, and sensitive information.  These electronic storage devices contained specific manufacturer, model, and serial numbers known to Plaintiffs as a result of their forensic investigation.  Certain of the project folders accessed by Teng Li contained data and programs that were not related to Teng Li's former duties; Teng Li had no legitimate reason to possess or view these folders, especially after resigning from Bridgetree.

63.    Upon information and belief, beginning on January 4th and continuing for several days thereafter, Teng Li copied thousands of files containing Bridgetree

confidential, trade secret, proprietary and sensitive information to such personal electronic storage devices or to other locations such as online storage.  There was no legitimate purpose for Teng Li to copy, retain possession of or transfer Bridgetree's files in this manner.

64.    After Teng Li's January 4th call to Beck, Teng Li would not respond to repeated attempts by Beck and other Bridgetree employees to contact him seeking answers to questions about missing passwords and other important Bridgetree work-related matters.

65.    January 5th in Xian, China, the first day after Teng Li's resignation the previous evening, seventeen (17) Bridgetree Xian employees did not show up for work at Bridgetree Xian, including, among others, Defendant Mali Xu, Bridgetree Xian's bookkeeper and office manager.  Upon information and belief, these Bridgetree Xian employees left Bridgetree to join RED F in China.  Five of the Bridgetree Xian employees who left to join RED F were keepers of and had access to Bridgetree's pre-mover related source code.

66.    When departing Bridgetree Xian for RED F, Mali Xu took Bridgetree Xian's accounting books and ledgers containing Bridgetree's confidential information without permission.  To this day, despite demands by Bridgetree, Mali Xu refuses to return Bridgetree Xian's accounting books and ledgers to Bridgetree.

67.    In addition, Mali Xu took a personal computer belonging to Bridgetree when departing Bridgetree Xian for RED F.  To date, Mali Xu has also failed to return this personal computer to Bridgetree.

68.    Among those Bridgetree Xian employees who left for RED F was Defendant Jason Li.  Upon information and belief, beginning on January 4th and continuing for

18

several days thereafter, Jason Li, under the direction of Defendant Teng Li and RED F,

copied files containing Bridgetree confidential, trade secret, proprietary and sensitive

information to personal electronic storage devices or to other locations such as online

storage. Included in the files copied were the employment contracts and other human

relations documents pertaining to Bridgetree Xian employees. There was no legitimate

purpose for Jason Li to copy, retain possession of, or transfer Bridgetree's files in this

manner.

69.    As stated above, Defendant Teng Li used Bridgetree confidential information

and trade secret information, including, for example, salary information, job duty, and

technical capability information to target the employees taken to RED F. The RED F

Defendants, including Teng Li and others, used this information to improperly induce the

targeted Bridgetree Xian employees to join RED F's China venture.

70.    At least by January 10, 2010, RED F began operations in Xian, China, in an

office one block from Bridgetree Xian's facility. Mali Xu and the other former

Bridgetree Xian employees went to work for RED F in its Xian, China office.

71.    Upon information and belief, Mali Xu, under the direction of Defendant Li,

falsely told Chinese government officials that Bridgetree was moving its operations out

of Xian.

72.    On January 7, 2010, Defendant Teng Li returned his computers and phone to

Bridgetree. At that time, deleted from Teng Li's computer was critical Bridgetree

confidential, trade secret, proprietary and sensitive data, including work product and

other data belonging to Bridgetree. In particular, Teng Li's computers were missing

critical email communications with Bridgetree customers relating to pending and ongoing business matters.

73. Teng Li knew this deleted information was Bridgetree's property and had great commercial value. Nevertheless, Teng Li apparently copied, removed, or deleted this information from his Bridgetree computers before returning them to Bridgetree more than two (2) days after his resignation from Bridgetree.

74. The deleted data appears to have been deliberately and maliciously deleted by Teng Li. Evidence of these facts was uncovered by extensive computer forensic investigation commissioned by Bridgetree. There is no legitimate or lawful reason for Teng Li to have engaged in such activities.

## The Fruit of Defendants' Unlawful Activities

75. On January 20, 2010, RED F announced that it opened an office in Xian, China with 20 employees, primarily, if not exclusively, former Bridgetree Xian employees.

76. RED F stated, "[t]he Xian office will be used for technology projects, including the development of web sites, marketing databases and other online systems." Roselli further stated that "[t]his is a true game changer for our digital marketing-services technologies platform. . . . This greatly increases our competitive advantage in the marketplace as it increases our full spectrum of marketing support for clients."

77. RED F and Target Point did not offer pre-mover or print marketing on-demand services until after Teng Li joined RED F.

78. In a January 20, 2010 *Mecklenburg Times* article, Roselli and Ms. Garces, RED F's CEO, explained that Defendant Teng Li provided the information that allowed RED F

to more quickly establish its Xian office than it otherwise could have. The article states

(emphasis added):

> The [RED F] China office will focus on technology-driven projects, such as the development of Web sites and systems, integrated marketing communication portals, and customer marketing analytical tools.
>
> **President Dan Roselli explained that the international opportunity arose after RED F hired Teng Li as managing director and chief technology officer.**
>
> Li is from the town in China where the new office is located, and his **connections** and **industry expertise** helped **simplify** the process of establishing an international presence, Roselli said.
>
> "The whole process has been very interesting," Garces said. "We've gotten up to speed **very quickly** with China labor laws, finances and the legal system. Fortunately, we've had some **help in navigating the waters**."

Sam Boykin, *RED F marketing firm expands into China*, MECKLENBURG TIMES, Jan. 20,

2010 (emphasis added).

79. Since at least January 20, 2010, RED F has been a direct competitor of

Bridgetree.

80. Upon information and belief, Target Point also is in direct competition with

Bridgetree.

<u>**Defendants' Circumvention of the Technological Measures**</u>
<u>**Controlling Access to Bridgetree's Copyright-Protected Works**</u>

81. Upon information and belief, even after his resignation, Defendant Teng Li, on

behalf of the RED F Defendants, accessed Bridgetree's computer systems, trade secrets

and confidential information wrongfully and without permission to unlawfully compete

with Bridgetree, particularly with respect to pre-mover services and print marketing on-demand services.

82.    On January 10, 2010, Abel Henson, a Bridgetree employee, entered the Bridgetree's National Database interface as a duly-authorized administrator and disabled Defendant Teng Li's access to the interface, given Teng Li's recent resignation from Bridgetree. Henson then logged off and logged back on to confirm that Teng Li's access had indeed been disabled.

83.    On April 12, 2010, Henson discovered that Teng Li's access to the Bridgetree National Database interface had been restored. In addition, Henson discovered that the Bridgetree's National Database interface log files have been erased in an apparent attempt to cover up the restoration of Teng Li's access. But for their deletion, these log files would have recorded Henson's disabling of Teng Li's access and its subsequent restoration.    The log would also have reflected actual access to and uses of the database using Bridgetree's protected account.

84.    Upon information and belief, Defendant Li, or someone acting under his direction or control, has continued to hack into the Bridgetree National Database on behalf of or for the benefit of the RED F Defendants, through improper circumvention of the technological measures designed to prevent access thereto, and as a result, has been improperly accessing the Bridgetree National Database and utilizing Bridgetree's license to the National Customer Database without authorization or approval.

85.    Bob Yuan was a Bridgetree Xian employee who left Bridgetree on January 5, 2010, to join RED F. Bob Yuan and Teng Li worked together to develop Bridgetree's

National Database systems.  Bob Yuan utilized the username "bob" when logging on to the Bridgetree National Database server and the Bridgetree National Database interface.

86.    In January and February 2010, after Bob Yuan departed Bridgetree for RED F, the user name "bob" logged into the Bridgetree National Database server multiple times.

87.    Upon information and belief, Bob Yuan, or someone acting under his direction or control, has been hacking into the Bridgetree National Database server on behalf of or for the benefit of the RED F Defendants, through improper circumvention of the technological measures designed to prevent access thereto, and as a result, has been improperly accessing the Bridgetree National Database and utilizing Bridgetree's license to the National Customer Database without authorization or approval.

## Defendants' Racketeering Conduct

88.    Defendants Roselli, Epperly, Teng Li, Scripter, Mali Xu, and Jason Li formed a conspiracy to defraud Bridgetree  Roselli, Epperly, Teng Li, Scripter, Mali Xu, and Jason Li all stand to benefit personally from their fraudulent activities.

89.    Upon information and belief, Roselli left the employ of Bank of America and became an employee of RED F about mid 2005.  Later in 2005, Roselli acquired RED F from its founders, Richard Elias and Daniel Feldstein.  Upon information and belief, since shortly after Roselli's acquisition of RED F, Roselli desired to improve the profitability of RED F by acquiring Bridgetree's print marketing-on-demand, pre-mover and other capabilities including Bridgetree's capabilities in China.

90.    Upon information and belief, Roselli knew that it would require considerable capital and take years to develop such capabilities.  The quickest way for Roselli to develop Bridgetree-like capabilities was to raid Bridgetree.  To accomplish this objective,

Roselli needed the assistance of people inside and outside of Bridgetree with knowledge of Bridgetree's operations and trade secrets in order to get the required information and capabilities out of Bridgetree.

91.    Although the precise dates are presently unknown, upon information and belief, the conspiracy and planning for the raid began at least as early as mid to late 2008 when with the assistance of Mark Epperly, a former Bridgetree sales executive, Roselli and RED F began to offer a print marketing on-demand type service with the assistance of Shutterfly, a national printing firm with a manufacturing location in Charlotte.

92.    On April 7, 2009, Epperly sent Beck an email attempting to set up a meeting between Roselli and Beck.  Epperly enticed Beck to attend such a meeting by purporting to state that Roselli "has a tremendous amount of respect for [Beck] and what [Beck has] been able to accomplish."  Upon information and belief, the real and undisclosed purpose for arranging this meeting was to gain confidential information from Bridgetree regarding how to make RED F's unprofitable Shutterfly operation profitable like Bridgetree's print marketing on-demand system.

93.    At least as early as June 2009, Roselli or Epperly or both had recruitment conversations with Teng Li that caused him to focus on RED F and to bookmark RED F's website in his Bridgetree computer.  Upon information and belief, Li then began regular email and phone communications with Roselli and Epperly respecting, among other matters, that Li would join them at RED F.

94.    On August 24, 2009, Articles of Incorporation for the RED F affiliate, Target Point, were filed with the State of North Carolina.  Target Point is a Defendant herein. That same date, Epperly again contacted Mark Beck via telephone to arrange and confirm

via email a lunch meeting among Epperly, Roselli, and Beck. As a former Bridgetree

sales person, Epperly was aware of the value of Bridgetree's capabilities and key

personnel, in particular Teng Li. Epperly and Roselli realized that if Beck knew they

were recruiting Teng Li, he would never agree to meet with them. Although the

ostensible purpose of the meeting was to explore ways that RED F and Bridgetree could

work together, this objective was never Roselli's or Epperly's true purpose. Rather, they

wished to confirm that Beck did not realize that Teng Li was cooperating with their plan

to raid Bridgetree.

95.     On October 23, 2009, the domain name *targetpoint.us* was registered with

godaddy.com by Anne Bradley, RED F's Chief Financial Officer and an agent of Roselli,

using interstate communications to further the fraudulent scheme.

96.     Upon information and belief, later in August or September 2009, Epperly set up

a golf meeting between Defendants Roselli and Teng Li.

97.     Upon information and belief, in late October, 2009 Roselli and Epperly enlisted

Scripter who knew the value and confidential nature of Bridgetree's trade secrets,

personnel, and confidential information. Scripter at that time had recently joined the

IBM Corporation in a capacity that enabled him to steer work to RED F.

98.     Upon information and belief, Epperly, Scripter, and Roselli knew that

Bridgetree would not voluntarily divulge its trade secrets and confidential information or

allow an employee to remove those trade secrets from Bridgetree. Upon information and

belief, Epperly, Scripter, and Roselli contacted Teng Li after Scripter joined IBM to use

the possibility of gaining IBM work to provide an incentive and inducement to Teng Li to

leave Bridgetree and to conspire to, and to steal Bridgetree's trade secrets and confidential information and raid Bridgetree's employees.

99.   On November 17, 2009, Teng Li sent an email to RED F's CEO, Sara Garces, regarding the market value to RED F and its current and potential customers of the capabilities and knowledge Teng Li could provide RED F.  Bridgetree's trade secrets, confidential information, and employees were integral to this market value.

100.  On December 28, 2009, Scripter sent Epperly and Roselli an email regarding RED F bidding for certain IBM work which they knew could be performed by RED F only if and when it received the fruits of its conspiracy to misappropriate Bridgetree's trade secrets, personnel, and confidential information.

101.  On December 30, 2009, Epperly sent Roselli and Scripter an email regarding their participation in an interstate teleconference conference regarding the IBM work. Upon information and belief, the IBM work was for a large IBM customer.

102.  On December 31, 2009, Scripter, Roselli, Li, Epperly and others working for RED F participated in a teleconference with a New Jersey call-in number, in which they discussed bidding on the IBM work.  An earlier email among the parties evidences the concerted effort to hide their conspiracy, by confirming their agreement not to reveal their actual identities during this teleconference and to use first names only.

103.  On Friday,  January 1, 2010, Roselli, Epperly, Scripter, and Teng Li met secretly at a restaurant in Charlotte, North Carolina, to discuss how to prepare a winning bid to IBM for the work on which Teng Li and the Xian personnel were essential.  In an email organizing this meeting, Epperly, then an employee at Vision Marketing, referred

to himself as President of Target Point and described the relationship of the parties as "partners."

104. Upon information and belief, as a result of the January 1, 2010 meeting and while still employed by Bridgetree and using Bridgetree's confidential information, Teng Li used international communications to actively recruit Jason Li, Mali Xu, and other Bridgetree Xian employees to join RED F from at least January 1, 2010 until at least January 5th. It is presently unknown whether these recruitment efforts began earlier in 2009. However, international communications were used to accomplish this recruitment as Teng Li was physically present in North Carolina during most of late 2009 and early 2010.

105. Upon information and belief, Teng Li used international communications to induce Bridgetree employees to join RED F by falsely communicating or causing Mali Xu or Jason Li or both to falsely state to the Bridgetree Xian employees coveted by Teng Li, Roselli, Epperly, Scripter, RED F and Target Point that Bridgetree Xian was closing. This knowingly false and malicious communication was intended to and did cause these employees to believe that they could not remain employed by Bridgetree.

106. Upon information and belief, in late 2009, Teng Li, while present in the United States, contacted Jason Li and Mali Xu in China at numerous times via email and voice communications to enlist them in the conspiracy with Roselli, Scripter and Epperly to steal Bridgetree's trade secrets, confidential information, and employees.

107. Upon information and belief, starting at least as early as January 2010, Teng Li, has been in regular communication with Jason Li and Mali Xu in China in order to coordinate which specific Bridgetree Xian key employees to poach for RED F, all of

whom who had regular trusted access to the Bridgetree trade secrets and confidential

information that Defendants needed.  Teng Li, Mali Xu, and Jason Li also discussed the

compensation that would need to be paid to those individuals once they left Bridgetree

and were working on behalf of RED F.

108.  Upon information and belief, at least as early as January 2010 and continuing

since then, the U.S.-based Teng Li has been in regular communication with Jason Li and

Mali Xu in order to establish the RED F facility in Xian, China, which is continuing to

exploit Bridgetree's trade secrets and confidential information.

109.  On January 4th at 8:47 a.m. EST, Teng Li called Beck and resigned from

Bridgetree.

110.  Defendants continue to remotely enter Bridgetree's systems in order to steal

valuable information.  These remote entries take place from IP addresses in China.

111.  Defendants Jason Li and Mali Xu ran the technical and administrative aspects of

Bridgetree's Xian office from Xian, China.  Jason Li and Mali Xu also set up RED F's

Xian office from China in coordination with Teng Li who was located in North Carolina.

This arrangement necessitated extensive communication between China and the United

States all in furtherance of the conspiracy to defraud Bridgetree.

112.  On January 11, 2010 at 11:06 p.m., Jason Li sent an email to Yong Cai, a

current Bridgetree employee, attaching a copy of a Bridgetree Xian employment

agreement.  This employment agreement was altered and not the actual agreement.  Jason

Li's email of the altered agreement was in furtherance of Defendant's' fraudulent

conspiracy.  Upon information and belief, Jason Li or Mali Xu or both of them used

international communications to delete accurate copies of the employment contracts of

the targeted employees from Bridgetree computers located in China and in North Carolina.

113.  On January 13, 2010, while in New York, Scripter, called Beck's North Carolina phone number attempting to contact Beck.  Beck was not available to receive the call so Scripter left a message on Beck's voicemail.  In the voice message, Scripter assured Beck he had nothing to do with Teng Li's departure from Bridgetree and RED F. This representation, an apparent effort to cover up Scripter participation in the conspiracy, was false as evidenced by Scripter's emails of January 1, 2010 to Teng Li (while Teng Li was still a Bridgetree employee) regarding a "partnership" to bid on an IBM project with Roselli and Epperly.

114.  On February 4, 2010, at 8:10 p.m., Defendant Mali Xu sent Karen Worley, a current Bridgetree employee in North Carolina, and Yong Cai, a current Bridgetree employee, an email requesting an answer to her prior demand for a release of liability in exchange for returning Bridgetree's ledgers.  This communication was done in furtherance of the conspiracy and to cover up the Defendants' wrongdoing.

115.  Defendant Teng Li, together with others acting pursuant to the conspiracy and the scheme discussed above, made, sent, and caused to be sent to Bridgetree numerous misrepresentations and omissions in the form of electronic mail and telephone calls, in interstate and/or foreign commerce, with the intent to deceive Bridgetree.

116.  Defendants, acting pursuant to the conspiracy and the scheme to defraud discussed above, made, sent, and caused to be sent to each other numerous writings and communications in the form of electronic mail and telephone calls, in interstate and foreign commerce, in furtherance of the conspiracy and the scheme.

117. Defendants have engaged and are engaged in a pattern of criminal conduct, given their past and ongoing use of interstate and foreign wires for the purpose of executing their scheme to defraud Plaintiffs and steal Bridgetree's trade secrets. The existence of this pattern of fraudulent and criminal conduct is evidenced by Defendants' initial conspiracy to raid Bridgetree's trade secrets and confidential data; Defendants' subsequent multiple thefts of Bridgetree's trade secrets and confidential data by Defendant Teng Li and those acting in concert with him; Defendants' further subsequent unauthorized access to Bridgetree's National Consumer Database interface; and Defendants' further subsequent use of Bridgetree's trade secrets and wrongfully acquired data competitively against Bridgetree. In furtherance of each of these activities and Defendants' overall scheme to defraud, Defendants made, sent, and caused to be sent to each other numerous writings and communications in the form of electronic mail and telephone calls, in interstate and foreign commerce.

118. Upon information and belief, Defendants, acting with the intent to defraud Plaintiffs and misappropriate and convert Bridgetree's trade secrets and tangible property, deceived Plaintiffs, and have wrongfully misappropriated and converted Bridgetree's trade secrets and tangible property to their own benefit, are engaged in a continuing enterprise, and are likely to continue that enterprise through the ongoing and future dissemination and use of Bridgetree's trade secrets.

### The Harm to Bridgetree Resulting from Defendants' Actions

119. Bridgetree has been harmed by, and incurred considerable expenses as a result of Defendants' unlawful actions, including the looting of Bridgetree Xian's key

personnel, Teng Li's destruction and misappropriation of Bridgetree's property and information, and the recent unlawful access to Bridgetree's database account.

120. Among the files deleted by Teng Li were Bridgetree email files showing his communication with RED F, Roselli, Garces, Scripter, and Epperly. By Teng Li's own design, emails did not reside on other computers at Bridgetree, although normally such emails would be maintained on a server designed to archive email information. Thus, Teng Li believed or hoped that by deleting the emails from his computer they were forever deleted. Additionally, Teng Li believed by deleting or attempting to delete these emails, Bridgetree would be hindered in its ability to follow-up and correct the effects of his misconduct.

121. Since his resignation, Teng Li has not cooperated with Bridgetree in restoring data or providing passwords and other critical information for the continued operation of Bridgetree's business, to which only he had access.

122. At considerable expense and effort, Bridgetree used sophisticated software and professional computer forensics services to recover Teng Li's passwords and to restore certain deleted data from Teng Li's computer. Included in the restored data were customer security discussion reports and action plans prepared by Teng Li at the request of Bridgetree's customers. These reports and action plans were provided to customers by Teng Li and obligated Bridgetree to meet certain customer requirements. Without knowledge of these reports and action plans, Bridgetree would fail to meet customer expectations to deliver on critical aspects requirements. Such failures would likely cause damage to Bridgetree's customers and jeopardize Bridgetree's ability to provide further work to these important customers. Teng Li was the only Bridgetree employee who

knew of the existence of these security reports and action plans and, but for the forensic reconstruction of same, would have been forever lost to Bridgetree.

123. Teng Li did not alert any Bridgetree employees to the existence of these security reports and action plans and, upon information and belief, intentionally deleted them to make them unavailable to Bridgetree.

124. The security reports and action plans are an integral part of Bridgetree's relationship with its clients. Teng Li's concealment and deletion of the security reports has harmed Bridgetree.

125. Upon his resignation from Bridgetree, Teng Li ceased to provide any services to Bridgetree or to make available necessary information such as passwords, work actions needed to be done, or other steps necessary for Bridgetree to provide on-going quality services to its customers. Teng Li intentionally concealed certain undertakings he had made on behalf of Bridgetree to its clients, compromising Bridgetree's ability to provide desired services to such clients.

126. Teng Li's raid of seventeen Bridgetree employees who were integral to Bridgetree's pre-mover and print marketing on-demand systems harmed Bridgetree's ability to service existing customers.

127. As a result of Defendants' actions, Bridgetree has lost Vision Marketing as a customer of Bridgetree's pre-mover services.

128. Defendants' unauthorized access to the National Consumer Database is contrary to Bridgetree's license with the National Consumer Database and has harmed Bridgetree and increased Bridgetree's usage costs.

## The Harm to Two Bit Dog Resulting from Teng Li's Actions

129. On account of Teng Li's position of trust within Bridgetree, Teng Li was invited to invest and became a partner in Bridgetree affiliated e-commerce business opportunities, including Two Bit Dog, LLC, a website-based marketer of pet products, www.twobitdog.com and another such entity, Cartoon Networks, LLC.

130. Upon his resignation from Bridgetree and earlier, Teng Li ceased to provide effective services to Two Bit Dog.

131. Two Bit Dog is dependent on Bridgetree for its services. Teng Li's deliberate disruption of Bridgetree's operations and his looting of key Bridgetree Xian technical leaders caused harm to Two Bit Dog and harmed Two Bit Dog's ability to provide on-going quality services its customers.

132. Teng Li's conduct in ceasing to provide effective service to Two Bit Dog breached his fiduciary duty to Two Bit Dog resulting from his ownership interest in Two Bit Dog.

133. As a consequence, Two Bit Dog's relations with its customers and key vendors were materially injured. Thus, Two Bit Dog, LLC suffered a marketing, financial and business relationship loss in 2009 and 2010.

### FIRST CLAIM FOR RELIEF
(Misappropriation and Threatened Misappropriation of Trade Secrets against
Defendants RED F, Target Point, Roselli, Teng Li, Jason Li, Xu, and Epperly)

134. The allegations contained in paragraphs 1 through 133 of this complaint are realleged and incorporated herein by reference.

135. Defendants Teng Li, RED F, and Roselli used Bridgetree confidential information and trade secrets to establish RED F's Xian office and compete against

Bridgetree.  Specifically and without limitation, Teng Li, RED F, and Roselli used

compensation of employees, specific employees' knowledge of Bridgetree's proprietary

systems and projects, vendor and customer information, and the methods of operations,

set up (from India and Xian operations), Bridgetree's data mining and pre-mover

knowhow, programs, source code are business and technical information of Bridgetree

which derives independent, actual or potential commercial value from not being generally

known or readily ascertainable to persons outside Bridgetree.  This information is the

subject of efforts by Bridgetree that are reasonable under the circumstances to maintain

their secrecy.

 136.  The information taken by Teng Li and Jason Li from their Bridgetree computers

and used by Teng Li and RED F to establish RED F's data mining and pre-mover

services is business and technical information of Bridgetree which derives independent,

actual or potential commercial value from not being generally known or readily

ascertainable to persons outside Bridgetree.  This information is the subject of efforts by

Bridgetree that are reasonable under the circumstances to maintain their secrecy.

 137.  Upon information and belief, Defendants RED F, Target Point, Roselli, Teng

Li, Jason Li, Xu, and Epperly have, and will continue to, misappropriate Bridgetree's

trade secrets and will use them for their own benefit.  Specifically and without limitation,

Defendants have misappropriated employee, vendor and customer information, methods

of operations, set up (from India and Xian operations), data mining and pre-mover know-

how, programs, source code and used such information, along with the needs of such

customers, vendors and employees, to improperly solicit employees and customers for

themselves.

138. The information used by Defendants to establish Target Point and compete against Bridgetree is business and technical information of Bridgetree which derives independent, actual or potential commercial value from not being generally known or readily ascertainable to persons outside of Bridgetree. This information is the subject of efforts by Bridgetree that are reasonable under the circumstances to maintain their secrecy.

139. Upon information and belief, Defendants have, and will continue to, misappropriate Bridgetree's trade secrets and will use them for their own benefit or for third parties who are not entitled to access to such information. Specifically, Defendants have misappropriated employee, vendor and customer information, Bridgetree's pre-mover programs, source code, knowhow, and other data of Bridgetree's and used such information, along with the knowledge gained thereby of needs of such Bridgetree customers, vendors and employees, to improperly solicit employees and customers for themselves or to secure work from third parties competitive to Bridgetree.

140. Defendants' conduct constitutes the misappropriation and threatened misappropriation of Bridgetree's trade secrets and has and will proximately cause damage to Bridgetree for which it is entitled to recover pursuant to the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 through 157, and the common law.

141. Defendants' conduct is wrongful, willful and malicious. Accordingly, Bridgetree is entitled to recover from Defendants punitive damages, in addition to its actual damages and attorney's fees, pursuant to applicable statutes.

142. In addition to its recovery of monetary damages and because their actions have and will cause irreparable injury, Bridgetree is entitled to have Defendants' misappropriation, disclosure and use of Bridgetree's trade secrets enjoined by this Court; all such trade secrets, in tangible form, returned to Bridgetree; and all documents and things created from Bridgetree's trade secrets destroyed.

## SECOND CLAIM FOR RELIEF

(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d), Against Defendants Roselli, Teng Li, Jason Li, Xu, Epperly, and Scripter)

143. The allegations contained in paragraphs 1 through 142 of this complaint are realleged and incorporated herein by reference.

144. This claim for relief arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et. seq.*, and is asserted against Defendants Roselli, Teng Li, Jason Li, Xu, Scripter and Epperly collectively the "RICO Defendants."

145. Defendant RED F is an enterprise engaged in activities in and affecting interstate commerce and foreign commerce within the meaning of an enterprise in 18 U.S.C. § 1961(4).

146. Defendant Target Point is an enterprise engaged in activities in and affecting interstate commerce and foreign commerce within the meaning of an enterprise in 18 U.S.C. § 1961(4).

147. The RICO Defendants, being persons within the meaning of 18 U.S.C. § 1961(3), and as persons associated with and employed by the enterprises alleged herein, conducted and participated in, directly and indirectly, the conduct of the affairs of said enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

148. The RICO Defendants, being persons within the meaning of 18 U.S.C. § 1961(3), engaged in a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), with the specific intent and expectation to injure Plaintiffs.

149. The predicate acts of racketeering activity engaged in by the RICO Defendants and those acting in concert with them or under their direction, include but are not limited to participation in a scheme to defraud by use of interstate wire (18 U.S.C. § 1343) as alleged herein.

150. Plaintiffs' businesses were injured by reason of these violations in that as a direct and proximate result of Defendants' acts, Plaintiffs suffered damages as alleged herein.

151. By reason of the Defendants' violations as specified above, Plaintiffs are entitled to three times their actual damages pursuant to 18 U.S.C. § 1964, with interest thereon from the date of loss and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices Against All Defendants)

152. The allegations contained in paragraphs 1 through 151 of this complaint are realleged and incorporated herein by reference.

153. Pursuant to N.C. Gen. Stat. §75-1.1, Defendants' conduct as set forth in this complaint constitutes an unfair method of competition and an unfair or deceptive act or practice in and affecting commerce, which has and will injure the goodwill and business of Bridgetree and has and will result in losses to it.

154. Accordingly, pursuant to N.C. Gen. Stat. §75-1.1 and §75-16, Bridgetree is entitled to recover from Defendants such damages as it may prove at trial and have those

damages trebled. Bridgetree is also entitled to recover its reasonable attorney's fees pursuant to N.C. Gen. Stat. §75-16.1.

## FOURTH CLAIM FOR RELIEF
(Computer Trespass, N.C. Gen. Stat. § 14-458, Against Defendant Teng Li)

155. The allegations contained in paragraphs 1 through 154 of this complaint are realleged and incorporated herein by reference.

156. Pursuant to N.C. Gen. Stat. § 14-458, Teng Li's conduct as set forth in this complaint constitutes unauthorized use of a computer with the intent to erase and copy Bridgetree's computer data.

157. Teng Li's unlawful actions have caused significant injury to Bridgetree. Bridgetree is entitled to recover damages sustained and the costs of the suit pursuant to N.C. Gen. Stat. § 1-539.2A.

## FIFTH CLAIM FOR RELIEF
(Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.,
Against Defendants RED F, Target Point and Teng Li)

158. The allegations contained in paragraphs 1 through 157 of this complaint are realleged and incorporated herein by reference.

159. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.§ 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

160. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(4) by knowingly, and with intent to defraud Bridgetree, accessing a protected computer, without authorization or by exceeding authorized access to such a computer,

and by means of such conduct furthered the intended fraud and obtained one or more

things of value.

161.  Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

1030(a)(5)(B) by intentionally accessing a protected computer without authorization,

recklessly causing damage to Bridgetree.

162.  Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

1030(a)(5)(C) by intentionally accessing a protected computer without authorization,

causing damage and loss to Bridgetree.

163.  The computer system or systems that Defendants accessed as described above

constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

164.  Bridgetree has suffered damage and loss by reason of these violations,

including, without limitation, harm to Bridgetree's data, programs, and computer systems

and other losses and damage in an amount to be proved at trial, but, in any event, in an

amount well over $5000 aggregated over a one-year period.

165.  Bridgetree is entitled to recover compensatory damages sustained pursuant to 18

U.S.C. § 1030(g).

166.  Defendants' unlawful access to and theft from Bridgetree's computers also have

caused Bridgetree irreparable injury.  Unless restrained and enjoined, Defendants will

continue to commit such acts.  Bridgetree's remedy at law is not adequate to compensate

it for these continuing injuries, entitling Bridgetree to remedies including injunctive relief

as provided by 18 U.S.C. § 1030(g).

## SIXTH CLAIM FOR RELIEF
(Violation of Digital Millennium Copyright Act, 17 U.S.C. § 1201,
Against Defendant Teng Li and RED F)

167. The allegations contained in paragraphs 1 through 166 of this complaint are reassigned and incorporated herein by reference.

168. Defendants Teng Li and RED F have violated and continue to violate the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A), by circumventing the technological measures that effectively control access to Bridgetree's copyright-protected Bridgetree National Database.

169. Upon information and belief, Teng Li gained access to the Bridgetree National Database interface and reinstated his username's access and changed his password to circumvent the username and password authentication system that controls access to the Bridgetree National Database interface.

170. Upon information and belief, Bob Yuan, acting under RED F's direction or control, gained access to the Bridgetree National Database server using a username and password that Bob Yuan and RED F were not authorized to use, thus circumventing the authentication system that controls access to the Bridgetree National Database interface.

171. Bridgetree has been and continues to be damaged by Defendants Teng Li's and RED F's actions and conduct. Further, if Teng Li and RED F are not enjoined and are allowed to continue this present conduct, Bridgetree will suffer irreparable injury, which cannot be adequately compensated by monetary damages. Bridgetree is therefore entitled to injunctive relief as provided by 17 U.S.C. 1203(b).

## SEVENTH CLAIM FOR RELIEF
### (Conversion Against RED F, Teng Li, and Mali Xu)

172. The allegations contained in paragraphs 1 through 171 of this complaint are realleged and incorporated herein by reference.

173. RED F, through its agent Mali Xu, wrongfully converted Bridgetree property, including Bridgetree Xian's accounting books and ledgers and a computer belonging to Bridgetree, to RED F's own use and enjoyment, thus depriving Bridgetree of its property. RED F engaged in these activities with the intent to permanently deprive Bridgetree of the use of its property.

174. Teng Li, wrongfully converted Bridgetree property, including files taken from computers belonging to Bridgetree, for his and RED F's own use and enjoyment, thus depriving Bridgetree of its property. Teng Li engaged in these activities with the intent to permanently deprive Bridgetree of the use of its property.

175. RED F's, Teng Li's, and Mali Xu's unauthorized assumption and exercise of rights of ownership have been to the exclusion of the ownership rights of Bridgetree.

176. RED F's, Teng Li's, and Mali Xu's conduct is wrongful, willful and malicious. Accordingly, Bridgetree is entitled to recover from Defendants punitive damages, in addition to its actual damages and attorney's fees, pursuant to applicable statutes.

177. RED F's, Teng Li's, and Mali Xu's conversion of Bridgetree's property has caused and threatens to continue to cause Bridgetree to suffer irreparable injury, for which adequate redress may not be had at law. Thus, for such conversion, Bridgetree is entitled to injunctive relief, including a preliminary injunction and permanent injunction.

## EIGHTH CLAIM FOR RELIEF
(Civil Conspiracy Against All Defendants)

178. The allegations contained in paragraphs 1 through 177 of this complaint are realleged and incorporated herein by reference.

179. Upon information and belief, Defendants, including Scripter, acted together, in concert, to commit one or more of the acts complained of herein: i.e., misappropriation of trade secrets, unfair and deceptive trade practices, conversion, and computer trespass.

180. Upon information and belief, Defendants had an agreement, express or implied, to undertake these acts in order to injure Bridgetree and to benefit RED F.

181. The acts complained of herein constitute overt acts in furtherance of the conspiracy.

182. Defendants are jointly and severally liable for each others' bad acts done in furtherance of the conspiracy.

183. As a result of the foregoing actions, Bridgetree has incurred damages in an amount greater than $10,000.00, and is entitled to punitive damages for willful and malicious misappropriation.

## NINTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty Against Teng Li)

184. The allegations contained in paragraphs 1 through 183 of this complaint are realleged and incorporated herein by reference.

185. Teng Li held a position of trust and confidence as a Vice President of Bridgetree and a member of Two Bit Dog. Teng Li owed various fiduciary duties and obligations including, but not limited to, duties of loyalty and good faith, the duty to disclose fully and truthfully all matters pertaining to membership and the duty to protect and preserve

Bridgetree's and Two Bit Dog's trade secrets, confidential and proprietary information

and customer and employee relationships, and the duty to not prefer his own interests

over the interests of Bridgetree and Two Bit Dog.

186.  Li, in working with a competitor, RED F, to establish an office in Xian and

crippling Bridgetree by his departure and destruction of data, violated the duties Teng Li

owed to Bridgetree and Two Bit Dog as a result of his position as Vice President of

Bridgetree and his role as a member of Two Bit Dog, including, specifically, duties of

loyalty, trust and confidentiality he owed to Bridgetree and Two Bit Dog.

187.  As a result of his breach of fiduciary duties, Bridgetree and Two Bit Dog are

entitled to recover from Teng Li such compensatory and punitive damages for willfully,

maliciously and consciously disregarding the rights of Bridgetree and Two Bit Dog as

will be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectively pray that:

1.  The Court order that Roselli, Epperly, Teng Li, Jason Li, Mali Xu, Scripter,

    Target Point, RED F, and any employee currently employed with RED F or

    Target Point, return to Bridgetree all of its confidential information and trade

    secrets that are in tangible form and destroy any other documents created by any

    of them from the trade secrets of Bridgetree or its vendors or customers;

2.  The Court enter an Order pursuant to N.C. Gen. Stat. §66-154(a) enjoining

    Defendants from continuing to use Bridgetree's trade secrets and confidential

    information, including, without limitation, Bridgetree's customer, employee and

vendor information, Bridgetree's pre-mover and print marketing on-demand data and process, and from continuing to compete with Bridgetree unfairly;

3.  The Court enter judgment against Defendants for their violation of the North Carolina Trade Secrets Protection Act, in the amount of damages as will be proven at trial pursuant to N.C. Gen. Stat. § 66-154(a), as well as punitive damages and attorneys' fees for Defendants' willful and malicious trade secret misappropriation, pursuant to N.C. Gen. Stat. § 66-154(c) and (d);

4.  The Court enter judgment against Defendants Roselli, Teng Li, Jason Li, Mali Xu, Mark Epperly, and Elton Scripter, for their violation of the Racketeer Influenced and Corrupt Organizations Act, in the amount of damages as will be proven at trial, as well as treble damages, costs, and attorney's fees, pursuant to 18 U.S.C. § 1964(c);

5.  The Court enter judgment against Defendants for their violation of the North Carolina Unfair and Deceptive Trade Practices Act, in the amount of damages as will be proven at trial, as well as treble damages, pursuant to N.C. Gen. Stat. § 75-16, and attorney's fees and costs, pursuant to N.C. Gen. Stat. § 75-16.1;

6.  The Court enter judgment against Teng Li individually for his acts of computer trespass, in the amount of damages as will be proven at trial, including costs, pursuant to N.C. Gen. Stat. § 1-539.2A;

7.  The Court enter judgment against Defendants RED F, Target Point, and Teng Li, for their violation of the Computer Fraud and Abuse Act, in the amount of damages as will be proven at trial, pursuant to 18 U.S.C. § 1964(c);

8.  The Court enter an Order pursuant to 17 U.S.C. § 1203(b)(1), enjoining
    Defendants from any further circumvention of any technological measure that
    effectively controls access to a copyright-protected work owned by Bridgetree
    and/or Two Bit Dog, or any conduct that otherwise violates the Digital
    Millennium Copyright Act;

9.  The Court enter judgment against Defendants RED F and Teng Li, for their
    violation of the Digital Millennium Copyright Act, in the amount of damages as
    will be proven at trial, pursuant to 17 U.S.C. § 1203(c), as well as costs, pursuant
    to 17 U.S.C. § 1204(b)(4), and attorney's fee, pursuant to 17 U.S.C. § 1203(b)(5).

10. The Court enter judgment against Defendants for their acts of conversion and
    conspiracy, and for compensatory and punitive damages as will be proven at trial;

11. The Court enter judgment against Defendant Teng Li for his breach of fiduciary
    duty, and for compensatory and punitive damages as will be proven at trial;

12. The Court grant Plaintiffs such other and further relief as it deems just and
    appropriate.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date:   May 18, 2010

s/ J. Mark Wilson
J. Mark Wilson
N.C. State Bar No. 25763
Kathryn G. Cole
N.C. State Bar No. 39106
Moore & Van Allen PLLC
Suite 4700
100 North Tryon Street
Charlotte, NC  28202-4003
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: markwilson@mvalaw.com
Email: katecole@mvalaw.com

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, Colorado 80302
Telephone:  (303) 402-6966
Facsimile:  (303) 402-6970
Email: scschr@fitcheven.com

Edward W. Gray
Christian R. Eriksen
Fitch, Even, Tabin & Flannery
One Lafayette Center, Suite 750S
1120 20th Street, NW
Washington, DC 20036
Telephone:  (202) 419-7000
Facsimile: (202) 419-7007
Email: egray@fitcheven.com
Email: ceriksen@fitcheven.com

*Attorneys for Plaintiffs Bridgetree, Inc.
and Two Bit Dog, LLC*

# Ex. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:10-cv-00228-FDW-DSC

| | | |
|---|---|---|
| **BRIDGETREE, INC.**, a South Carolina company, and **TWO BIT DOG, LLC**, a South Carolina limited liability company, | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | |
| **RED F MARKETING LLC**, a North Carolina limited liability company; **TARGET POINT, LLC** a North Carolina limited liability company; **DANIEL ROSELLI**, an individual; **TENG LI**, an individual; **JASON LI**, an individual; **MALI XU**, an individual; **MARK EPPERLY**, an individual; and **ELTON T. SCRIPTER**, an individual, | ) ) ) ) ) ) ) ) ) ) ) | **BRIDGETREE'S FIRST SET OF REQUESTS FOR PRODUCTION TO ELTON T. SCRIPTER** |
| **Defendants.** | ) | |

Plaintiff Bridgetree, Inc. ("Bridgetree") requests that Defendant Elton Scripter produce the following documents and things for inspection and copying, pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure within thirty (30) days of service hereof at the offices of Moore & Van Allen, Suite 4700, 100 North Tryon Street, Charlotte, NC 28202 or at any such location and time as the parties may agree. The following definitions and instructions apply.

## DEFINITIONS AND INSTRUCTIONS

**A.      Definitions**

As used herein, the term(s):

1.      "Bridgetree" and/or "Plaintiff" shall mean Bridgetree, Inc.

2.      "Two Bit Dog" and/or Plaintiff" shall mean Two Bit Dog, LLC.

3.      "You" and "your" shall refer to Elton T. Scripter, and his agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his authority or subject to his control.

4.      "RED F" shall refer to Defendant RED F Marketing, LLC and its subsidiaries and affiliates (including but not limited to Target Point and Shaanxi Red F Technology Services Company), their principals, officers, directors, trustees, employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on their behalf, pursuant to their authority or subject to their control.

5.      "Target Point" shall refer to Defendant Target Point, LLC and its principals, officers, directors, trustees, employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on its behalf, pursuant to its authority or subject to its control.

6.      "Roselli" shall refer to Defendant Daniel Roselli and his employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his

authority or subject to his control.

7.      "Teng Li" shall refer to Defendant Teng Li and his employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his authority or subject to his control.

8.      "Epperly" shall refer to Defendant Mark Epperly and his employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his authority or subject to his control.

9.      "Jason Li" shall refer to Defendant Jason Li and his employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his authority or subject to his control.

10.      "Mali Xu" shall refer to Defendant Mali Xu and her employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on her behalf, pursuant to her authority or subject to her control.

11.      "Scripter" shall refer to Defendant Elton T. Scripter and his employees, staff members, agents and representatives, lawyers, accountants, consultants and business or professional affiliates, as well as any other person acting on his behalf, pursuant to his authority or subject to his control.

12.      "Person" shall include (a) natural persons (also referred to as "individuals"); (b) legal entities, including, without limitation, profit and not-for-profit

corporations, partnerships, firms, associations, professional corporations, and proprietorships; and (c) governmental bodies or agencies.

13. "Document" or "documents" is synonymous in meaning and equal in scope to the usage of this term in Rule 34 of the Federal Rules of Civil Procedure and all applicable case law, including, without limitation, electronically stored information and the definitions set forth in Rule 1001 of the Federal Rules of Evidence. "Document" or "documents" includes, but is not limited to, writings, drawings, graphs, charts, photographs, photo records, sound recordings, videotapes, email from any type of email system, email attachments, interactive media, social networking media such as Facebook or LinkedIn, facsimiles, magnetic media, and any other electronic or other data compilations from which information can be obtained or translated, if necessary by detection devices into reasonably usable form, or any other document intended to be discovered under Rule 34 of the Federal Rules of Civil Procedure. Any document that differs from the original or another duplicate thereof because of additions, deletions, or notations (for example, but not limited to, drafts), or because it appears in a different file, shall be separately produced.

14. "Identify" or "identity":

    a.     when used with respect to a natural person, shall mean to set forth the person's (1) full name; (2) present or last known home and business addresses; (3) present or last known telephone number; (4) present or last known business affiliation; and (5) present or former affiliation with Defendant, if any;

    b.     when used with respect to a document, shall mean to set forth (1)

the author of the document; (2) each person to whom the document was addressed and to whom a copy of the document was given or sent; (3) the date appearing on the face of the document; (4) the general nature or a description of the document (*i.e.*, whether it is a letter, memorandum, drawing, etc.); and (5) the present or last known custodian of the document; and

c.  when used with respect to a corporation or other business entity, shall mean to set forth (1) its name; (2) its place of incorporation or organization; (3) its principal place of business; and (4) the identity of all persons affiliated with the corporation who have knowledge of the matter with respect to which it is named in a response to an interrogatory answer.

15.    "Describe in detail" an act, event, or occurrence shall mean to state the substance of each act, event, or occurrence, state when and where it occurred, and to identify (1) the person(s) having the most knowledge thereof, and (2) each person participating therein.

16.    "Discussing," "referring to," "relating to," "relating in any way to" or "pertaining to" shall mean any relationship whatever kind or nature, be it direct or indirect, and includes without limitation, concerning, mentioning, commenting on, connected with, discussing, describing, analyzing, explaining, showing, reflecting, setting forth, dealing with, comprising, consisting of, containing, constituting, resulting from, recording, evidencing or in any way relevant to a particular subject, in whole or in part, and either directly or indirectly.

17.     "Communication(s)" shall mean any oral or written expression, disclosure, transfer, transmission, or exchange of information or any nonverbal conduct of a person intended by that person to be a substitute for an oral or written expression, disclosure, transfer, transmission, or exchange of information, in whatever form, by whatever means, including, but not limited to oral, written, face-to-face, telephone, facsimile, network transfer, electronic mail, Blackberry messages, text messages, instant messages, voicemail, postal mail, personal delivery, or otherwise.

18.     The term "advertisement" includes all marketing and promotional materials, including, but not limited to items on billboards or other public displays, items in newspapers, magazines, telephone books, catalogues, circulars, leaflets, pamphlets, bulletins, trading posts, industry publications, and direct mail pieces, and items on the radio, television and the Internet.

19.     The term "all" and "each" shall be construed as all and each.

20.     "And" and "or" shall be construed conjunctively when such construction would bring within the interrogatory information that would otherwise be outside of its scope, but shall be construed disjunctively when such construction would bring within the interrogatory information that would otherwise be outside of its scope.

21.     The use of the singular form of any word includes the plural and vice versa.

**B.** **INSTRUCTIONS**

1. **Continuing Obligation.** With respect to each of the requests for production, unless otherwise expressly stated, the information sought is that which is current to the date of your answer thereto. These requests for production are of a continuing nature. You are required to serve supplemental responses under the applicable rules if your knowledge changes in the future. Please take notice that objection will be interposed at trial to the introduction by Defendant of any evidence requested by these requests for production but not fully disclosed in your responses, including required supplementation.

2. **Foreign Language Documents.** If all or any part of an identified document is in a language other than English, identify any translation of the non-English language in the document.

3. **Privilege Claims.** If, because of a claim of any privilege, you do not answer any request or subpart thereof, or you withhold any requested information or any document on such ground, set forth the privilege claimed, and the facts upon which you rely to support the claim of privilege. For each document for which privilege is claimed, include at least the following information, in accordance with Fed.R.Civ.P. 26(b)(5):

     a.    a brief description of the nature and subject matter of the document, including the title and type of document (*e.g.*, letter, memorandum, drawing, etc.);

     b.    the document's date;

     c.    the identity of the document's author(s), including the designation of "Esq." after any attorney;

    d.    the identity of the person(s) to whom the document is addressed, including all person(s) who received copies;

    e.    the identity of the person(s) who received copies;

    f.    the identity of the person(s) to whom the document was in fact sent, including the designation of "Esq." after any attorney; and

    g.    the interrogatory to which the document or withheld information is otherwise responsive.

4.    **Information Known by Other Persons or Contained in Documents Not in Your Current Possession.**  When a request calls for information not known to you, or documents not in your actual possession, custody, or control, but you have information and/or belief that the information or documents are available elsewhere, identify the person(s) having such knowledge or possessing such documents.  In any case where documents previously in your possession have been destroyed or are not presently in your possession, provide a statement for each such document of the current location and custodian of the document or the nature, date of, and reason for the document's destruction.

5.    **Documents Not Presently Available.**  If any documents referred to in your responses were, but are no longer in your possession, custody, or control, state what disposition was made of them and when.  If any such documents have been lost or destroyed, describe in detail the circumstances of such loss or destruction and, to the extent possible, identify each lost or destroyed document.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

All documents referring to, relating to, directed to, sent to, and/or received from RED F, Target Point, Teng Li, Roselli, Epperly, Jason Li, and/or Mali Xu, including, but not limited to, communications between You, on the one hand, and RED F, Target Point, Teng Li, Roselli, and/or Epperly on the other hand; communications to others describing RED F's capabilities; documents submitted to you by RED F in the course of your employment at IBM; and notes kept by you regarding RED F made in the course of your employment at IBM.

### REQUEST FOR PRODUCTION NO. 2

All documents relating to the actions and occurrences described in the Complaint filed in this lawsuit, including but not limited to communications between any of the defendants and you or IBM, documents related to bidding for Pfizer projects, documents related to any meetings between you and other defendants named in this lawsuit, and any documents that you collected in preparation for your meeting with Mark Beck, Edward Gray, and Kathryn Cole on June 23, 2010, at the offices of Moore & Van Allen.

### REQUEST FOR PRODUCTION NO. 3

Copies of your Federal tax returns from 2008, 2009, and 2010.

Date:  October 22nd, 2010

s/ Kathryn G. Cole
J. Mark Wilson
N.C. State Bar No. 25763
Kathryn G. Cole
N.C. State Bar No. 39106
Moore & Van Allen PLLC
Suite 4700
100 North Tryon Street
Charlotte, NC  28202-4003
T:  (704) 331-1000
F:  (704) 339-5981
Email:  markwilson@mvalaw.com
Email:  katecole@mvalaw.com

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, Colorado  80302
T:  (303) 402-6966
F:  (303) 402-6970
Email:  scschr@fitcheven.com

Edward W. Gray
Christian R. Eriksen
Fitch, Even, Tabin & Flannery
One Lafayette Center, Suite 750S
1120 20th Street, NW
Washington, DC  20036
T:  (202) 419-7000
F:  (202) 419-7007
Email:  egray@fitcheven.com
Email:  ceriksen@fitcheven.com

*Attorneys for Plaintiffs*
*Bridgetree, Inc. and Two Bit Dog, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of *Bridgetree's First Set of Requests for Production to Elton T. Scripter* has been served as follows:

Via hand delivery:    Louis A. Bledsoe, III
Kate E. Payerle
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900

*Attorneys for Defendant*
*Elton T. Scripter*

Via First Class Mail:  Irving M. Brenner
John G. McDonald
MCGUIRE WOODS LLP
Suite 2900
100 North Tryon Street
Charlotte, NC 28202-4003

*Attorneys for Defendants and Counterclaimants Red F*
*Marketing LLC, Target Point, LLC, Daniel Roselli, Teng*
*Li, Mark Epperly*

Via First Class Mail:  Mel J. Garofalo
J. Douglas Grimes
HEDRICK, GARDNER, KINCHELOE & GAROFALO, LLP
P.O. Box 30397
Charlotte, NC 28230

*Attorneys for Counterclaim Defendants*
*Mark Beck, Bridgetree, Inc., and Chris Talley*

This the 22nd day of October, 2010.

s/ Kathryn G. Cole

# Ex. 3

# FITCH EVEN TABIN & FLANNERY
### INTELLECTUAL PROPERTY LAW | EST. IN 1859

WRITER'S DIRECT DIAL:
312.629.7908

WRITER'S EMAIL
NLITTLE@FITCHEVEN.COM

November 17, 2010

*Via Overnight Courier*

David C. Drummond
Senior Vice President, Corporate Development
and Chief Legal Officer
GOOGLE, INC.
1600 Amphitheater Parkway
Mountain View, California 94043

> Re:   Notice of Subpoena for All Records Associated with the
> Accounts, People and Addresses Identified in the Subpoena
> *Bridgetree, Inc. v. Red F Marketing LLC, et al.*
> Civil Action No. 10 CV 0228 (W.D.N.C.)

Dear Mr. Drummond:

We are counsel for Plaintiff in the above-captioned lawsuit and enclose, herewith, a Subpoena issued by the U.S. District Court for the Northern District of California ordering Google to produce all records associated with the account, individual and/or address identified in Schedule A attached to the Subpoena. We request that you provide us with any authorization form Google requires for production of these documents as soon as possible so that we can have this document executed by the appropriate account holders pursuant to 18 U.S.C. §2702(b)(3) and the Stored Communications Act.

In the meantime and in view of the attached subpoena, please immediately place a litigation hold or preservation request on all such accounts in order to ensure that no documents, including emails, can be irretrievably deleted (such as by putting a hold on the account, circulating a preservation letter, or the like).

We have copied the Custodian of Records for Google on this letter in an effort to expedite the handling of this request.

We have scheduled the production to be made at Google, but we would also accept production being mailed to our offices in Chicago, Illinois.

Please feel free to contact us should you have any questions or wish to discuss anything further regarding this matter.

David C. Drummond, Esq.
November 17, 2010
Page 2 of 2

Very truly yours,

FITCH EVEN TABIN & FLANNERY

Nicole L. Little

MAB:CAP:NLL: 573635
Enclosure
cc:    Google Custodian of Records (Via Facsimile, 650.649.2939)
       Louis A. Bledsoe, III (via regular mail)
       Kate E. Payerle (via regular mail)
       Irving M. Brenner (via regular mail)
       John G. McDonald (via regular mail)
       Steven N. Baker (via regular mail)

# FITCH EVEN TABIN & FLANNERY
### INTELLECTUAL PROPERTY LAW | EST. IN 1859
*Celebrating*
150 YEARS

WRITER'S DIRECT DIAL:
312.629.7908

WRITER'S E-MAIL
NLITTLE@FITCHEVEN.COM

November 18, 2010

**Via Regular Mail**

Irving M. Brenner
John G. McDonald
Steven N. Baker
MCGUIRE WOODS LLP
Bank of America Corporate Center
100 N. Tryon Street
Suite 2900
Charlotte, NC 28202

Louis A. Bledsoe, III
Kate E. Payerle
ROBINSON BRADSHAW
101 North Tryon Street
Suite 1900
Charlotte, NC 28246

Re:   *Bridgetree, Inc. et al. v. Red F Marketing LLC et al.*
Civil Action No. 10-CV-228
Our File No.:  8820/97401

Dear Counsel:

Enclosed please find five subpoenas served upon Facebook, Inc., Google, Inc., LinkedIn, Corp., Microsoft Corp. and Yahoo! Inc. for your records.

Very truly yours,

FITCH, EVEN, TABIN & FLANNERY

Nicole L. Little

NLL:jp:574055
Enclosures

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Bridgetree, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    3:10-cv-00228-FDW-DSC |
| Red F Marketing LLC et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Western District of North Carolina         ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Google, Inc., 1600 Amphitheater Parkway, Mountain View, CA 94043

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Google, Inc., 1600 Amphitheater Parkway, Mountain View, CA 94043 | Date and Time: 12/09/2010 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: November 17, 2010

CLERK OF COURT

                                                    OR

_____              _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Bridgetree, Inc.
_____, who issues or requests this subpoena, are:

Mark A. Borsos, Fitch Even Tabin & Flannery, 120 S. LaSalle St., Suite 1600, Chicago, IL 60657 312-577-7000

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:10-cv-00228-FDW-DSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Schedule A

Pursuant to Fed.R.Civ.P. 45, you are requested to produce:

1. For (1) the account tscripter@gmail.com; (2) the individual Elton T. Scripter (aka Tom Scripter); and (3) the address 19031 Chandlers Landing Drive, Unit or Apartment D, Cornelius, North Carolina; documents sufficient to identify all accounts associated with any one or more of the above identified account, individual and/or address.   The above identified account and any other account(s) identified by the requested documents are collectively referred to below as "the ACCOUNTS."

2. For all the ACCOUNTS, documents sufficient to identify all registration, connection and directory history and information.

3. For all the ACCOUNTS, all IP history logs and information.

4. For all the ACCOUNTS, listings of all emails (e.g., via screen capture, screen dump, etc.).

5. For all the ACCOUNTS, all emails (including deleted emails located in a "Trash" box or otherwise) and attachments thereto from June 1, 2009 to the present.

6. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments thereto that are to or from or contain carbon copies or blind carbon copies to any of the following contacts: Daniel Roselli; droselli@redf.com; Teng Li; Jason Li; Mali Xu; Mark Epperly; mepperly@visionmarketing.com; mepperly@targetpoint.us; Elton Scripter; RED F MARKETING LLC (or "Red F" or "RedF"); TARGET POINT; tomscripter@hotmail.com; drtengli@yahoo.com; Klaus Werner; Victoria Racine; Tiffany Sartoris; Michael Young; and/or Vision Marketing.

7. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments mentioning "Bridgetree", Mark Beck, "Red F," or "RedF."

8. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments thereto from June 1, 2009 to the present that relate to emails or notifications to, from or regarding social media websites and applications, including, but not limited to Facebook, MySpace, LinkedIn and Twitter.

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043



Tel: 650.479.6720
Fax: 650.887.1673
www.google.com

December 1, 2010

***Via Facsimile and Express Courier***
**(312)577-7007**

Mark A. Borsos                                    DEC 0 6 2010
Fitch Even Tabin & Flannery
120 S. LaSalle Street, Suite 1600
Chicago, IL 60657
(312)577-7000

> **Re: Bridgetree, Inc. v. Red F Marketing LLC et al., United States District**
> **Court, Northern District of California, 3:10-cv-00228-FDW-DSC (Internal Ref.**
> **No. 120193)**

Dear Mark A. Borsos:

We have received your subpoena for documents, dated 11-17-2010, in the above-referenced matter. As we understand it, you are seeking documents related to the Gmail account TSCRIPTER. Please note that we are unable to locate Gmail accounts in our records given a personal name or mailing address; therefore, we have no documents responsive to such requests.

This letter is to advise you that Google has forwarded notice of this matter, including your name and contact information, to the user at the email address provided by the user. Unless Google is informed of the user's objection and/or intent to file a motion to quash, Google will respond to the subpoena 20 days from the date of notification. Please note that Google reserves the right to object to the subpoena in its response.

Section 2702(a) of the federal Electronic Communications Privacy Act prohibits Google from disclosing the content of electronic communications pursuant to a civil subpoena. 18 U.S.C. § 2702(a); Theofel v. Farey-Jones, 359 F.3d 1066 (9th Cir. 2004); see also In re Subpoena Duces Tecum to AOL, LLC., 550 F.Supp.2d 606, 611 (E.D. Va. 2008); Flagg v. City of Detroit, 252 F.R.D. 346, 366 (E.D. Mich. 2008); Viacom Int'l Inc. v. YouTube Inc., 253 F.R.D. 256 (S.D.N.Y. 2008); O'Grady v. Superior Court of Santa Clara, 139 Cal. App. 4th 1423, 1441-43 (2006). The appropriate way to seek such content is to direct your request to the account holder who has custody and control of the data in the account. O'Grady, 139 Cal. App. 4th at 1446-47. Furthermore, if the account holder is a party to the underlying litigation, you may serve a document request on the account holder for the content sought. See id.; see also Flagg, 252 F.R.D. at 348, 366-67.

Google objects to the requests in the subpoena to the extent they seek information already in Plaintiff's possession or available to Plaintiff from some other source that is more convenient, less burdensome or less expensive, including information available to Plaintiff from public sources. This means that if you are seeking account or other information from Google that is equally available from a party in the litigation, Google objects to that request on that basis.



Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043

Tel: 650.479.6720
Fax: 650.887.1673
www.google.com

Google also objects to the requests to the extent they seek information containing confidential financial, proprietary or trade secret information, or any information subject to a confidentiality agreement or protective order.  While Google does not require a protective order for production of its non-confidential information, Google will only produce information it deems confidential pursuant to a confidentiality agreement or protective order that it deems suitable for the protection of its confidential information.  Please provide a confidentiality agreement or protective order if you intend to seek confidential documents of Google in your requests, as we will not produce confidential information without entry of a protective order that we deem suitable to protect the confidentiality of our documents.

Google further objects to the requests to the extent they seek information protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. We also object to the requests to the extent that they are irrelevant, overly broad, vague, ambiguous, unlimited in time or scope, fail to identify the information sought with reasonable particularity, or impose an undue burden on Google.  Google objects to the requests to the extent that they seek information that is not relevant or reasonably likely to lead to the discovery of admissible evidence.

If you have any questions, please feel free to contact the Legal Support Department at GOOGLE-LEGAL-SUPPORT@GOOGLE.COM.  Thank you.

Very truly yours,

Kalynn Yastro
Legal Investigations Support

# Ex. 4

# FITCH EVEN TABIN&FLANNERY
**INTELLECTUAL PROPERTY LAW** | EST. IN 1859

WRITER'S DIRECT DIAL:
312.629.7908

WRITER'S EMAIL:
NLITTLE@FITCHEVEN.COM

November 17, 2010

*Via Overnight Courier*

Custodian of Records
FACEBOOK, INC.
1601 S. California Avenue
Palo Alto, California 94304

Re:    Notice of Subpoena for All Records Associated with the
Accounts, People and Addresses Identified in the Subpoena
*Bridgetree, Inc. v. Red F Marketing LLC, et al.*
Civil Action No. 10 CV 0228 (W.D.N.C.)

Dear Sir or Madam:

We are counsel for Plaintiff in the above-captioned lawsuit and enclose, herewith, a Subpoena issued by the U.S. District Court for the Northern District of California ordering Facebook to produce all records associated with the account, individual and/or address identified in Schedule A attached to the Subpoena. We request that you provide us with any authorization form Facebook requires for production of these documents as soon as possible so that we can have this document executed by the appropriate account holders pursuant to 18 U.S.C. §2702(b)(3) and the Stored Communications Act.

In the meantime and in view of the attached subpoena, please immediately place a litigation hold or preservation request on all such accounts in order to ensure that no documents, including emails, can be irretrievably deleted (such as by putting a hold on the account, circulating a preservation letter, or the like).

We have scheduled the production to be made at Facebook, but we would also accept production being mailed to our offices in Chicago, Illinois.

Please feel free to contact us should you have any questions or wish to discuss anything further regarding this matter.

Very truly yours,

FITCH EVEN TABIN & FLANNERY

Nicole L. Little

Custodian of Records
November 17, 2010
Page 2 of 2


MAB:CAP:NLL:573634
Enclosure
cc:    Louis A. Bledsoe, III (via regular mail)
       Kate E. Payerle (via regular mail)
       Irving M. Brenner (via regular mail)
       John G. McDonald (via regular mail)
       Steven N. Baker (via regular mail)

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| Bridgetree, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:10-cv-00228-FDW-DSC |
| Red F Marketing LLC et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Western District of North Carolina        ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Facebook, Inc., 1601 S. California Avenue, Palo Alto, California 94304

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Facebook, Inc., 1601 S. California Avenue, Palo Alto, California 94304 | Date and Time:<br><br>12/09/2010 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _Nevember 17, 2010_

| CLERK OF COURT | OR | _signature_ |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      Bridgetree, Inc.
_____, who issues or requests this subpoena, are:

Mark A. Borsos, Fitch Even Tabin & Flannery, 120 S. LaSalle St., Suite 1600, Chicago, IL 60657 312-577-7000

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:10-cv-00228-FDW-DSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00    .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                                        *Server's signature*

                                            _____
                                                        *Printed name and title*

                                            _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Schedule A

Pursuant to Fed.R.Civ.P. 45, you are requested to produce:

1.   For:

   a.   the individual Dr. Teng Li, the email address drtengli@yahoo.com, and the address 12406 Aden Creek Way, Pineville, North Carolina;

   b.   the individual Mark Epperly, the email addresses mepperly@visionmarketing.com and mepperly@targetpoint.us, and the address 6917 club Champion Lane, Mint Hill, North Carolina 28227;

   c.   the individual Elton T. Scripter (aka Tom Scripter), the email addresses tomscripter@hotmail.com and tscripter@gmail.com, and the address 19031 Chandlers Landing Drive, Unit D, Cornelius, North Carolina 28031;

   d.   the individual Dan/Daniel Roselli, the email address droselli@redf.com, and the address 2611 Whitney Hill Road, Charlotte, North Carolina 28226,

   documents sufficient to identify all accounts associated with any one or more of the above identified individuals, email addresses and/or address. The above identified account and any other account(s) identified by the requested documents are collectively referred to below as "the ACCOUNTS."

2.   For all the ACCOUNTS, documents sufficient to identify all registration, connection and directory history and information.

3.   For all the ACCOUNTS, all intellectual property history logs and information.

4.   For all the ACCOUNTS, all status updates, wall posts, tags, notes, links, videos, photos, questions, or other notifications and communications that are to or from or include any of the following contacts: Daniel (Dan) Roselli; Teng Li; Jason Li; Mali Xu; Mark Epperly; Elton Scripter; Tom Scripter; RED F MARKETING LLC (or "Red F" or "RedF"); or TARGET POINT.

5.   For all the ACCOUNTS, all status updates, wall posts, tags, notes, links, videos, photos, questions, or other notifications and communications that mention "Bridgetree" or Mark Beck.

6.   For all the ACCOUNTS, listings of all messages (e.g., via screen capture, screen dump, etc.).

7.   For all the ACCOUNTS, all messages (received, sent, archived or deleted) that are to or from or include any of the following contacts: Daniel (Dan) Roselli; Teng Li;

Schedule A
Page 2 of 2

Jason Li; Mali Xu; Mark Epperly; Elton Scripter; Tom Scripter; RED F
MARKETING LLC (or "Red F" or "RedF"); or TARGET POINT.



**To:** Attorney Nicole L. Little
**Case:** Bridgetree Inc. vs. Red F Marketing LLC et al.
**Re:** SUBPOENA FOR USER DATA: Dr. Teng Li, Mark Epperly, Elton T. Scripter, Dan Roselli
**Date:** 11/23/2010

To the extent Facebook, Inc. (Facebook) has any responsive documents, it will not produce any such documents until thirty (30) days from the date of this memo. Facebook also reserves the right to notify the applicable user of the request at issue which may result in additional delays or could prevent production altogether. Facebook will not produce any further documents in response to the request for the reasons set forth below.

Facebook hereby objects on the following grounds:

_____ Improper service. The request was not properly served. Facebook requires personal service of civil subpoenas.

_x_ Insufficient time to respond. Facebook was not served with the request in sufficient time to respond.

_____ Lack of jurisdiction. The subpoena surpasses the issuing Court's subpoena power. State court subpoenas must issue from a court within California, where the applicable custodian and information sought resides, or must be domesticated and issued pursuant to the proper California court commission. Federal civil subpoenas seeking the production of documents must issue from the court in the district where the production is to be made, the Northern District of California.

_x_ Unenforceable. The request intrudes upon information protected by the Stored Communications Act ("SCA") and is unenforceable under federal law. *See* 18 U.S.C. section 2701 et seq.; *O'Grady v. Superior Court,* 139 Cal.App.4th 1423, 1448 (Cal.App. 2006); *In re Subpoena Duces Tecum* to AOL, LLC, 550 F. Supp.2d 606, 609-10 (E.D. Va. 2008). The SCA is a federal statute that prohibits Facebook from producing the contents of user accounts.

_____ Vague. The request calls for information that is either unintelligible in some respect or it fails to identify the information sought with adequate precision. For example, a request that seeks certain information about a user named "John Smith" when there are several users with that name would be vague. Please provide a detailed description of the information sought, including the subject's Facebook user ID, password, full legal name and any other precise identifying information.

_x_ Overly Broad / Unduly burdensome. The request is unreasonably broad in scope and would require Facebook to spend an unreasonable amount of time or other resources to comply and/or seeks information in the control of a party to the litigation.

_____ Improper request for expert/non-expert information. The request calls for testimony or analysis and amounts to an impermissible interrogatory.

_____ Attorney-client privilege. The request intrudes upon Facebook's attorney-client privilege or seeks attorney work-product or information protected from disclosure by other applicable privilege.

___     Seeks highly confidential Facebook information.  The request impermissibly seeks
Facebook information that is highly confidential, proprietary, and potentially a trade secret.
_x_     Insufficient payment of fees.  The requesting party failed to pay the required $500.00
in minimum processing fees for the costs of production.  The production may be delayed
until the proper fees are paid in full.  Checks should be made payable to Facebook, Inc. and
should be sent to the attention of Facebook Security at 1601 S. California Ave., Palo Alto, CA,
94304, bearing the name of the case for which the fees are paid.  Payment of fees does not
excuse any other objections stated herein.

To the extent Facebook provides records in response to the request in whole or in part, it does so
without waiving any of the aforementioned objections.  Furthermore, delivery of any materials does
not constitute consent by Facebook to jurisdiction (including the personal appearance of any
Facebook representative) or production of any materials beyond those included.


Signed,

___/s/ Parvez Jamshed
Facebook Security Department
Parvez.jamshed@facebook.com

---

### PROOF OF SERVICE

I am more than eighteen years old and not a party to this action.  My business address is 1601 S.

California Ave., Palo Alto, CA  94304.  On November 23, 2010, I directed true and correct copies of

the following document(s):

### OBJECTIONS TO SUBPOENA FOR USER DATA

by transmitting true copies of these documents via email:

**Attorney Nicole L. little**
**nlittle@fitcheven.com**

I declare under penalty of perjury that the foregoing is true and correct.
    Executed on November 23, 2010, at Palo Alto, California.


___/s/ Parvez Jamshed
Parvez Jamshed

# Ex. 5

# FITCH EVEN TABIN & FLANNERY

## INTELLECTUAL PROPERTY LAW | EST. IN 1859

WRITER'S DIRECT DIAL:
312.629.7908

WRITER'S EMAIL
NLITTLE@FITCHEVEN.COM

November 17, 2010

*Via Overnight Courier*

Erika Rottenberg
Vice President, General Counsel and Secretary
LINKEDIN, CORP.
2029 Stierlin Court
Mountain View, California 94043

Re:    Notice of Subpoena for All Records Associated with the
Accounts, People and Addresses Identified in the Subpoena
*Bridgetree, Inc. v. Red F Marketing LLC, et al.*
Civil Action No. 10 CV 0228 (W.D.N.C.)

Dear Ms. Rottenberg:

We are counsel for Plaintiff in the above-captioned lawsuit and enclose, herewith, a Subpoena issued by the U.S. District Court for the Northern District of California ordering LinkedIn to produce all records associated with the account, individual and/or address identified in Schedule A attached to the Subpoena. We request that you provide us with any authorization form LinkedIn requires for production of these documents as soon as possible so that we can have this document executed by the appropriate account holders pursuant to 18 U.S.C. §2702(b)(3) and the Stored Communications Act.

In the meantime and in view of the attached subpoena, please immediately place a litigation hold or preservation request on all such accounts in order to ensure that no documents, including emails, can be irretrievably deleted (such as by putting a hold on the account, circulating a preservation letter, or the like).

We have scheduled the production to be made at LinkedIn, but we would also accept production being mailed to our offices in Chicago, Illinois.

Please feel free to contact us should you have any questions or wish to discuss anything further regarding this matter.

Very truly yours,

FITCH EVEN TABIN & FLANNERY

Nicole L. Little

Erika Rottenberg, Esq.
November 17, 2010
Page 2 of 2


MAB:CAP:NLL: 573636
Enclosure
cc:      Louis A. Bledsoe, III (via regular mail)
         Kate E. Payerle (via regular mail)
         Irving M. Brenner (via regular mail)
         John G. McDonald (via regular mail)
         Steven N. Baker (via regular mail)

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| Bridgetree, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Red F Marketing LLC et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.    3:10-cv-00228-FDW-DSC

(If the action is pending in another district, state where:

Western District of North Carolina        )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   LinkedIn Corp., 2029 Stierlin Court, Moutain View, California 94043

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place:  LinkedIn Corp., 2029 Stierlin Court, Moutain View, California 94043 | Date and Time: <br> 12/09/2010 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  *November 17, 2010*

| CLERK OF COURT | OR | |
|---|---|---|
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Bridgetree, Inc.
, who issues or requests this subpoena, are:

Mark A. Borsos Fitch Even Tabin & Flannery, 120 S. LaSalle St., Suite 1600, Chicago, IL 60657 312-577-7000

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:10-cv-00228-FDW-DSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ 0.00 _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Schedule A

Pursuant to Fed.R.Civ.P. 45, you are requested to produce:

1.    For:

    a.  the individual Dr. Teng Li, the email address drtengli@yahoo.com, and the address 12406 Aden Creek Way, Pineville, North Carolina;

    b.  the individual Mark Epperly, the email addresses mepperly@visionmarketing.com and mepperly@targetpoint.us, and the address 6917 club Champion Lane, Mint Hill, North Carolina 28227;

    c.  the individual Elton T. Scripter (aka Tom Scripter), the email addresses tomscripter@hotmail.com and tscripter@gmail.com, and the address 19031 Chandlers Landing Drive, Unit D, Cornelius, North Carolina 28031;

    d.  the individual Dan/Daniel Roselli, the email address droselli@redf.com, and the address 2611 Whitney Hill Road, Charlotte, North Carolina 28226,

documents sufficient to identify all accounts associated with any one or more of the above identified individuals, email addresses and/or address.  The above identified account and any other account(s) identified by the requested documents are collectively referred to below as "the ACCOUNTS."

2.    For all the ACCOUNTS, documents sufficient to identify all registration, connection and directory history and information.

3.    For all the ACCOUNTS, all intellectual property history logs and information.

4.    For all the ACCOUNTS, listings of all messages and invitations (e.g., via screen capture, screen dump, etc.) in the inbox, sent, archived, trash or draft folders.

5.    For all the ACCOUNTS, all postings, threads, replies, links, discussions or other communications in the LinkedIn Group or Company Profile for "RED F Marketing."

6.    For all the ACCOUNTS, all postings, threads, replies, links, discussions or other communications in the LinkedIn Group or Company Profile for "Targetpoint."

7.    For all the ACCOUNTS, all postings, threads, replies, links, discussions or other communications in any LinkedIn Group that are to or from or include any of the following contacts: Daniel (Dan) Roselli; Teng Li; Jason Li; Mali Xu; Mark Epperly; Elton Scripter; Tom Scripter; RED F MARKETING LLC (or "Red F" or "RedF"); or TARGET POINT.

Schedule A
Page 2 of 2

8.      For all the ACCOUNTS, all messages and invitations in the inbox, sent, archived, trash or draft folders mentioning "Bridgetree" or Mark Beck.

9.      For all the ACCOUNTS, all postings, threads, replies, links, discussions or other communications in any LinkedIn Group (including any deleted communications) mentioning "Bridgetree" or Mark Beck.



Blake Lawit
Director of Legal – IP and Litigation
LinkedIn Corporation
2027 Stierlin Court
Mountain View, CA 94043
Tel: 650-605-1016
blawit@linkedin.com

December 3, 2010

*Via U.S. Mail (Certified) and Fax*

Nicole L. Little
Fitch Even Tabin & Flannery
120 South La Salle St., Suite 1600
Chicago, IL 60603-3406

RE: Deposition Subpoena in the Matter of *Bridgetree, Inc. v. Red F Marketing LLC*

Dear Ms. Little:

LinkedIn Corporation ("LinkedIn") has received your Subpoena in the above-noted matter (the "Subpoena"), which appears to seek production of the records connected to LinkedIn accounts in the names of Dr. Teng Li, Mark Epperly, Elton Scripter and Daniel Roselli (the "Members").

LinkedIn hereby objects to the Subpoena to the extent that it seeks the content of communications between and among LinkedIn members and information regarding the Members' connections. Production of records beyond basic subscriber information as defined at 18 U.S.C. § 2703(c)(2) without the consent of the LinkedIn members would exceed the disclosure permitted under the Stored Communications Act, 18 U.S.C. §§ 2702-03 ("SCA"). Under the SCA, LinkedIn is prohibited from disclosing the content of user communications or stored files, unless a specific statutory exception permits the disclosure. 18 U.S.C. §§ 2702-2703. There is no general statutory exception that would allow LinkedIn to produce contents in response to your subpoena in this case. Attached is the authorization form that you requested to be executed by the appropriate account holders pursuant to the Stored Communications Act, but I note that LinkedIn has received a letter dated December 2, 2010 from counsel for Dr. Teng Li, Mark Epperly, and Daniel Roselli informing LinkedIn that they do not consent to any disclosure of communications.

The Court of Appeals of California has acknowledged the SCA's prohibitions in *O'Grady v. Superior Court*, 2006 Cal. App. LEXIS 802, *2-3 (Ct. App. Cal. May 26, 2006). In that case, a civil plaintiff sent subpoenas to an email service provider in order to obtain evidence relating to theft of trade secrets. *Id.* The appellate court rejected the plaintiff's argument that the SCA contained an implied exception for civil discovery, and concluded that the subpoena violated the SCA. *Id.* at *3. *See also Crispin v. Christian Audigier, Inc.*, ___ F. Supp. 2d ___, 2010 WL 2293238 (May 26, 2010) (quoting William Jeremy Robison, Note, *Free at What Cost? Cloud Computing Privacy Under the Stored Communications Act*, 98 Geo. L.J. 1195, 1196



December 3, 2010
Page 2 of 2

(2010)) ("Among the Act's most significant, although unstated, privacy protections is the ability to prevent a third party from using a subpoena in a civil case to get a user's stored communications or data directly from an ECS or RCS provider") *Flagg v. City of Detroit*, 252 F.R.D. 346, 366 (E.D. Mich. 2008) (holding that a party should serve the defendant to obtain contents of communications rather than a third-party because "it is apparent" that third-party disclosure of contents of a communication pursuant to a subpoena is unlawful under § 2702(a)); *Viacom Int'l v. YouTube*, 253 F.R.D. 256 (S.D.N.Y. 2008) ("§ 2702 contains no exception for disclosure of [the content of subscriber] communications pursuant to civil discovery requests."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611-12 (E.D. Va. 2008) ("Applying the clear and unambiguous language of § 2702" a provider "may not divulge the contents of [a user's] electronic communications to [a civil litigant] because the statutory language of the Privacy Act does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas").

　　　　LinkedIn reserves all of its other objections to the Subpoena including that the requests are vague and ambiguous, overly broad, and impose an undue burden on LinkedIn. In particular, LinkedIn does not have an automated way to search or produce member communications by keyword, so the requests for particular communications are extremely burdensome under the relevant standard under F.R.C.P. 45. Should you obtain appropriate consent, LinkedIn would only be in a position to produce all of the communications within the scope of the consent to the account holder or other designated third-party who could then further review the documents to identify the specified communications. Placing this burden on a non-party, however, is inappropriate. LinkedIn also reserves the right to notify the Members of the Subpoena, which may result in additional delays or could prevent production altogether.

　　　　Without waiver of these objections, and absent notice of legal process initiated by the Member to prevent its production, LinkedIn does not object to providing:

- The Member Control page that sets forth details of the account including the email address used to create the accounts;
- The member profiles.

If you have questions or would like to discuss this matter, please feel free to call or email me (650-605-1016 or blawit@linkedin.com).

Regards,

Blake Lawit
Director of Legal – IP and Litigation
LinkedIn Corporation

cc: John G. MacDonald

## CONSENT & AUTHORIZATION TO PRODUCE LINKEDIN ACCOUNT INFORMATION

I, the undersigned, am the holder of an account with LinkedIn Corporation ("LinkedIn") in the name set forth below associated with the email address also set forth below ("Account"). I understand that information related to my Account is being sought in connection with the attached subpoena or other process ("Subpoena").

I hereby certify that I am the owner of the Account for which records are requested.

I consent and authorize LinkedIn to produce to the issuer of the Subpoena any and all information related to the Account including but not limited to information about my identity, address, telephone number, alternative email address, my billing information, my online activities, my connections, my postings, my communications and the contents of all other electronic files maintained by LinkedIn related to me and/or my Account.

I have read and understand the contents of the Consent & Authorization to Produce LinkedIn Account Information.

I agree to hold harmless and do forever hold harmless LinkedIn for the disclosure of such information and do forever waive on my behalf, and on behalf of my heirs and assigns, any and all claims resulting from LinkedIn's disclosure of any information related to me or my Account pursuant to this consent.

**Section 1542 Waiver. I UNDERSTAND THAT THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.** Furthermore, in giving the releases set forth in this Agreement, which include claims which may be unknown to me at present, I acknowledge that I have read and understand Section 1542 of the California Civil Code which reads as follows: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."** I hereby expressly waive and relinquish all rights and benefits under that section and any law or legal principle of similar effect in any jurisdiction with respect to my release of claims herein, including but not limited to the release of unknown and unsuspected claims.

Account Holder Name: _____

Email Address Associated with LinkedIn Account:_____

Account Holder Signature:_____   Date:_____

**In order for this consent to be effective, the Account holder must (a) sign this certificate, (b) have it notarized as set forth below, and (c) provide the signed and notarized certificate to LinkedIn Corporation; 2029 Stierlin Court; Mountain View, CA 94043, attention: Legal.**

---

### ACKNOWLEDGMENT

State of _____

County of _____

On _____ before me, _____
(insert name and title of the officer) personally appeared_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I declare under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

---

# Ex. 6

# FITCH EVEN TABIN & FLANNERY
### INTELLECTUAL PROPERTY LAW | EST. IN 1859

WRITER'S DIRECT DIAL:
312.629.7908

WRITER'S EMAIL:
NLITTLE@FITCHEVEN.COM

November 17, 2010

*Via Overnight Courier*

Michael J. Callahan, Esq.
Executive Vice President, Secretary and General Counsel
YAHOO! INC.
701 First Avenue
Sunnyvale, California 94089

Re:   Notice of Subpoena for All Records Associated with the
      Accounts, People and Addresses Identified in the Subpoena
      *Bridgetree, Inc. v. Red F Marketing LLC, et al.*
      Civil Action No. 10 CV 0228 (W.D.N.C.)

Dear Mr. Callahan:

We are counsel for Plaintiff in the above-captioned lawsuit and enclose, herewith, a Subpoena issued by the U.S. District Court for the Northern District of California ordering Yahoo to produce all records associated with the account, individual and/or address identified in Schedule A attached to the Subpoena. We request that you provide us with any authorization form Yahoo requires for production of these documents as soon as possible so that we can have this document executed by the appropriate account holders pursuant to 18 U.S.C. §2702(b)(3) and the Stored Communications Act.

In the meantime and in view of the attached subpoena, please immediately place a litigation hold or preservation request on all such accounts in order to ensure that no documents, including emails, can be irretrievably deleted (such as by putting a hold on the account, circulating a preservation letter, or the like).

We have copied the Custodian of Records for Yahoo on this letter in an effort to expedite the handling of this request.

We have scheduled the production to be made at Yahoo, but we would also accept production being mailed to our offices in Chicago, Illinois.

Please feel free to contact us should you have any questions or wish to discuss anything further regarding this matter.

Michael J. Callahan, Esq.
November 17, 2010
Page 2 of 2

Very truly yours,

FITCH EVEN TABIN & FLANNERY

Nicole L. Little

MAB:CAP:NLL: 573638
Enclosure
cc:    Yahoo! Inc. Custodian of Records (Via Facsimile, 408.349.7941)
       Louis A. Bledsoe, III (via regular mail)
       Kate E. Payerle (via regular mail)
       Irving M. Brenner (via regular mail)
       John G. McDonald (via regular mail)
       Steven N. Baker (via regular mail)

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| Bridgetree, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Red F Marketing LLC et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   3:10-cv-00228-FDW-DSC

(If the action is pending in another district, state where:
Western District of North Carolina        )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Yahoo! Inc., 701 First Avenue, Sunnyvale, CA 94089

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place:  Yahoo! Inc., 701 First Avenue, Sunnyvale, CA 94089 | Date and Time: |
|---|---|
| | 12/09/2010 5:00 pm |

□ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: *November 17, 2010*

|   *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Bridgetree, Inc.
_____, who issues or requests this subpoena, are:

Mark A. Borsos, Fitch Even Tabin & Flannery, 120 S. LaSalle St., Suite 1600, Chicago, IL 60657 312-577-7000

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:10-cv-00228-FDW-DSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                          *Server's signature*

                                                          _____
                                                          *Printed name and title*

                                                          _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

·(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Schedule A

Pursuant to Fed.R.Civ.P. 45, you are requested to produce:

1. For (1) the account drtengli@yahoo.com; (2) the individual Dr. Teng Li; and (3) the address 12406 Aden Creek Way, Pineville, North Carolina; documents sufficient to identify all accounts associated with any one or more of the above identified account, individual, and/or address. The above identified account and any other account(s) identified by the requested documents are collectively referred to below as "the ACCOUNTS."

2. For all the ACCOUNTS, documents sufficient to identify all registration, connection and directory history and information.

3. For all the ACCOUNTS, all IP history logs and information.

4. For all the ACCOUNTS, listings of all emails (e.g., via screen capture, screen dump, etc.).

5. For all the ACCOUNTS, all emails (including deleted emails located in a "Trash" box or otherwise) and attachments thereto from June 1, 2009 to the present.

6. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments thereto that are to or from or contain carbon copies or blind carbon copies to any of the following contacts: Daniel Roselli; droselli@redf.com; Teng Li; Jason Li; Mali Xu; Mark Epperly; mepperly@visionmarketing.com; mepperly@targetpoint.us; Elton Scripter; RED F MARKETING LLC (or "Red F" or "RedF"); TARGET POINT; tomscripter@hotmail.com; tscripter@gmail.com; Klaus Werner; Victoria Racine; Michael Young; Vision Marketing; and/or Tiffany Sartoris.

7. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments thereto from June 1, 2009 to the present mentioning "Bridgetree", Mark Beck, "Red F," or "RedF."

8. For all the ACCOUNTS, all emails (including deleted emails including deleted emails located in a "Trash" box or otherwise) and attachments thereto from June 1, 2009 to the present that relate to emails or notifications to, from or regarding social media websites and applications, including, but not limited to Facebook, MySpace, LinkedIn and Twitter.

11/23/2010 10:05 FAX 4083492256          YAHOO!                          ☑002



                              November 23, 2010


*Via Facsimile and U.S. Mail*
312-577-7007

Ms. Nicole L. Little, Esq.
Fitch Even Tabin & Flannery                                    NOV **2 3** 2010
120 South LaSalle Street, Suite 1600
Chicago, IL 60657


       Re:   *Bridgetree, Inc. v. Red F Marketing LLC, et al.*
             <u>United States District Court for the Northern District of California,</u>
             <u>Case No. 3:10-cv-00228-FDW-DSC</u>
             (Internal Reference Number: 166680)

Dear Ms. Little:

Yahoo! Inc. ("Yahoo!") is sending you this invoice in order to recover its costs incurred in responding to
the preservation request that Yahoo! recently received from you.

We were unable to connect the following name, coupled with the specified address, to a specific Yahoo!
subscriber: Dr. Teng Li. A Yahoo! ID is required in order to search our systems accurately.

Yahoo! will preserve the information for the remaining user ID specified in your request for a period of
ninety (90) days. If you wish to extend the preservation for one additional ninety (90) day period, please
notify Yahoo! in writing prior to the expiration of the original ninety (90) day period.

In accordance with Yahoo!'s policy on requests for reimbursement of costs associated with subpoena
compliance, Yahoo! has incurred the following costs for which it requests reimbursement:

| Fees: | Legal Assistant time | $60.00 |
|-------|---------------------|--------|
|       | Total:              | $60.00 |

Please direct payment to Yahoo! Custodian of Records, 701 First Avenue, Sunnyvale, CA 94089. The
federal tax identification number for Yahoo! Inc. is 77-0398689. In addition, please note the Internal
Reference Number (listed above) on your check.

If you will be serving a subpoena on Yahoo! seeking email content for the remaining Yahoo! subscribers
identified in your request for preservation, please be advised that pursuant to 18 U.S.C. §2702(a), Yahoo!
is prohibited from the disclosure of such electronic communications contents except under very limited
circumstances. Please note that with regard to email content, Yahoo! only has access to and maintains
what a user retains in his or her email account.

Finally, Yahoo! is a resident of California and the vast majority of documents and information regarding
its business is retrievable from its headquarters in Sunnyvale, California. Subpoenas must be personally
served on Yahoo! at 701 First Avenue, Sunnyvale, California, 94089, to the attention of the Yahoo!
Custodian of Records.


701 first avenue
sunnyvale, ca 94089
phone 408 349 3300  fax 408 349 3301



If you have any questions about this invoice, methods of payment, or the process for issuing us a subpoena, please contact the Yahoo! Legal Compliance Team at 408-349-3687.

By this letter, Yahoo! does not waive objections to any further proceedings in this matter.

Sincerely,

Doug Nolan
Compliance Paralegal II
(T) (408) 349-7312
(F) (408) 349-7941

# DO YOU YAHOO!?
# fax message

date:   **November 23, 2010**

to:     **Ms. Nicole L. Little, Esq.**          fax#:   **312-577-7007**
        **Fitch Even Tabin & Flannery**
        **120 South LaSalle Street, Suite 1600**
        **Chicago, IL  60657**

Re:     ***Bridgetree, Inc. v. Red F Marketing LLC, et al.***
        ***United States District Court for the Northern***
        ***District of California,***
        ***Case No. 3:10-cv-00228-FDW-DSC***
        **(Internal Reference Number:  166680)**

from:   **Doug Nolan**                          pages:   __3__   (including coversheet)
        **Compliance Paralegal II**
        **408-349-7312**

**COMMENTS:  Originals will follow via U.S. Mail.  Please contact me if you have any questions.  Additionally, please be advised that all Yahoo! Legal Subpoena Compliance Office personnel will be unavailable on the following dates:**

**Yahoo! Inc. 2010 Holiday Closure Schedule:**

November 25th (Thursday)
November 26th (Friday)
December 24th (Friday)
December 29th (Wednesday)
December 30th (Thursday)
December 31st (Friday)

**701 First Avenue**
**Sunnyvale, CA 94089**
**Compliance Fax: 408-349-7941**
**Phone: 408-349-3300**

# Ex. 7

# FITCH EVEN TABIN & FLANNERY
## INTELLECTUAL PROPERTY LAW | EST. IN 1859
*Celebrating*
150 YEARS

WRITER'S DIRECT DIAL
312.577.7000

WRITER'S E-MAIL
MBORSOS@FITCHEVEN.COM

December 21, 2010

***Via e-Mail Only***

John G. McDonald, Esq.
McGuire Woods LLP
Bank of America Corporate Ctr.
100 N. Tryon Street
Suite 2900
Charlotte, NC 28202

Re:   *Bridgetree, Inc. et al. v. Red F Marketing LLC et al.*
Civil Action No. 10-CV-228
Our File No.:  8820/97401

Dear John:

We are writing to follow up on our teleconference of December 20, 2010 concerning content residing with social media entities and personal e-mail providers ("Third Party Content"). We jointly acknowledge that our respective clients have legitimate interest in seeking access to Third Party Content that is within the scope of discovery in this matter while restricting access to content that is privileged or irrelevant. The following letter confirms a mutually agreed approach to resolve these issues and to recognize that the social media entities and personal e-mail providers may possess discoverable material relevant to the discovery obligations in this litigation that is not currently accessible or searchable to the parties.

## Obligations of Social Media Entities and Personal E-mail Providers

As a solution to the privilege issues and to ensure a complete production, the parties agree that the social media entities and personal e-mail providers have the parties' permission to comply with their obligations created by the subpoenas issued by the parties, but that the social media entities and personal e-mail providers will produce the requested Third Party Content from June 1, 2009 to the present from accounts of the RED F Defendants (Teng Li, Dan Roselli, and Mark Epperly) to John McDonald at McGuire Woods and retain a complete set of all materials for the pendency of the above referenced litigation.

John G. McDonald, Esq.
December 21, 2010
Page 2

**Obligations of McGuire Woods**

      Once McGuire Woods has received the Third Party Content, it will then place that material into an electronic database and electronically search the material for relevant documents, including but not limited to, a key word search using the following agreed keywords:

| Account Holder | Key Words |
| --- | --- |
| Teng Li | Roselli, Jason Li, Mali, Epperly, Scripter, Target Point, Red F, Klaus, Werner, Racine, Satoris, Bridgetree, Beck |
| Dan Roselli | Teng, Jason Li, Mali, Epperly, Scripter, Target Point, Klaus, Werner, Racine, Satoris, Bridgetree, Beck |
| Mark Epperly | Teng, Roselli, Jason Li, Mali, Scripter, Target Point, Red F, Klaus, Werner, Racine, Satoris, Bridgetree, Beck |

      McGuire Woods agrees that it will then produce to Plaintiffs' counsel all discoverable (i.e., non-privileged) material which is elicited from that data base by means of this keyword search.

      We trust the above accurately conveys what the parties agreed to and that by the signature below, the undersigned indicates its consent and the consent of the Red F Defendants to the foregoing procedure and acceptance of the obligations binding upon them, including the execution of consent forms or other documents required by the Third Party Content providers in order for documents to be released to McGuire Woods. It is further agreed that upon execution by the undersigned a copy of this letter may be provided to each of the Third Party Content providers.

John G. McDonald, Esq.
December 21, 2010
Page 3

      We believe that in view of the foregoing, the motions to quash filed by Defendants are not longer necessary.  Therefore, please let us know if you will agree to withdraw those motions or stipulate to an extension of time for response while we negotiate any further details regarding the handling of the Third Party Content.

                    Very truly yours,

                    FITCH, EVEN, TABIN & FLANNERY

                    Mark A. Borsos

MAB/mmv
cc:    Kate E. Payerle

Agreed and Accepted:      McGuire Woods LLP

                    By:_____

                    Date:_____

# FITCH EVEN TABIN & FLANNERY
## INTELLECTUAL PROPERTY LAW | EST. IN 1859
*Celebrating*
150 YEARS

WRITER'S DIRECT DIAL
312.577.7000

WRITER'S E-MAIL
MBORSOS@FITCHEVEN.COM

December 21, 2010

***Via e-Mail Only***

Kate E. Payerle, Esq.
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street
Suite 1900
Charlotte, NC 28202

Re: *Bridgetree, Inc. et al. v. Red F Marketing LLC et al.*
Civil Action No. 10-CV-228
Our File No.: 8820/97401

Dear Kate:

We are writing to follow up on our teleconference of December 20, 2010 concerning content residing with social media entities and personal e-mail providers ("Third Party Content"). We jointly acknowledge that our respective clients have legitimate interest in seeking access to Third Party Content that is within the scope of discovery in this matter while restricting access to content that is privileged or irrelevant. The following letter confirms a mutually agreed approach to resolve these issues and to recognize that the social media entities and personal e-mail providers may possess discoverable material relevant to the discovery obligations in this litigation that is not currently accessible or searchable to the parties.

## Obligations of Social Media Entities and Personal E-mail Providers

As a solution to the privilege issues and to ensure a complete production, the parties agree that the social media entities and personal e-mail providers have the parties' permission to comply with their obligations created by the subpoenas issued by the parties, but that the social media entities and personal e-mail providers will produce the requested Third Party Content from June 1, 2009 to the present from accounts of Scripter to Kate Payerle at Robinson, Bradshaw & Hinson and retain a complete set of all materials for the pendency of the above referenced litigation.

Kate E. Payerle, Esq.
December 21, 2010
Page 2

**Obligations of Robinson, Bradshaw & Hinson**

Robinson, Bradshaw & Hinson will retain the Third Party Content and make sure that the Third Party Content has been produced. If the Third Party Content is produced by the social media entities and/or e-mail providers in an electronically searchable format, Robinson, Bradshaw & Hinson will electronically search the material for relevant documents, including but not limited to, a key word search using the following agreed keywords: Teng, Roselli, Jason Li, Mali, Epperly, Scripter, Target Point, Red F, Klaus, Werner, Racine, Satoris, Bridgetree, Beck. Robinson, Bradshaw & Hinson agrees that it will then produce to Plaintiffs' counsel all discoverable (i.e., non-privileged) material which is elicited from this keyword search.

We trust the above accurately conveys what the parties agreed to and that by the signature below, the undersigned indicates its consent and the consent of Scripter to the foregoing procedure and acceptance of the obligations binding upon them, including the execution of consent forms or other documents required by the Third Party Content providers in order for documents to be released to Robinson, Bradshaw & Hinson. It is further agreed that upon execution by the undersigned a copy of this letter may be provided to each of the Third Party Content providers.

We believe that in view of the foregoing, the motions to quash filed by Scripter are no longer necessary. Therefore, please let us know if you will agree to withdraw those motions or stipulate to an extension of time for response while we negotiate any further details regarding the handling of the Third Party Content.

Very truly yours,

FITCH, EVEN, TABIN & FLANNERY

Mark A. Borsos

MAB/mmv
cc:   John McDonald

Agreed and Accepted:        Robinson, Bradshaw & Hinson, P.A.

By:_____

Date:_____

# Ex. 8



**Robinson Bradshaw**

Kate E. Payerle
**Charlotte Office**
704.377.8129 Direct Phone
704.339.3429 Direct Fax
kpayerle@rbh.com

**rbh.com**

December 22, 2010

**VIA ELECTRONIC MAIL**

Mark Andrew Borsos
Fitch Even Tabin & Fannery
120 S. LaSalle Street, Suite 1600
Chicago, IL 60603

     Re:    ***Bridgetree, Inc., et al. v. Red F Marketing LLC, et al.***
              **Civil Action No. 3:10-CV-228 (WDNC)**

Dear Mark:

We have reviewed your letter of December 21, 2010, and find that your description of a "mutually agreed approach" to these third party subpoenas bears no resemblance to my understanding of how we ended our December 21, 2010 conference call. We are therefore not inclined to spend any additional time attempting to reach an agreement on how to handle these third party subpoenas, and will stand on our pending motions to quash.

        Please contact me should you have any questions.

                      Sincerely,

                      ROBINSON BRADSHAW & HINSON, P.A.

                      Kate E. Payerle

KP/ltm

cc:    Edward W. Gray
       Christine Abuel Pompa
       J. Mark Wilson
       Kathryn G. Cole
       Irving M. Brenner
       John G. McDonald

Mark Andrew Borsos
December 22, 2010
Page 2

---

(via email)

# FITCH EVEN TABIN & FLANNERY
## INTELLECTUAL PROPERTY LAW | EST. IN 1859
*Celebrating*
150 YEARS

WRITER'S DIRECT DIAL
312.577.7000

WRITER'S E-MAIL
MBORSOS@FITCHEVEN.COM

December 30, 2010

***Via e-Mail Only***

Kate E. Payerle, Esq.
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street
Suite 1900
Charlotte, NC 28202

Re:  *Bridgetree, Inc. et al. v. Red F Marketing LLC et al.*
Civil Action No. 10-CV-228
Our File No.:  8820/97401

Dear Kate:

We write in response to your December 22, 2010 e-mail regarding third party subpoenas. We believe that it is to the benefit of all parties to attempt to agree on the handling of documents in the possession of third party social media entities and e-mail providers.

We are not sure, based on your brief and dismissive letter, exactly what you find objectionable regarding the approach outlined in our December 21, 2010 letter.  If you are opposed to even receiving the requested information from the third parties, we do not believe that such a position is reasonable.  We have been willing to limit and refine the requested documents, as shown in our December 21 letter.  Given that Scripter has clearly used social media and private e-mail accounts to contact the other defendants, it cannot be argued that the requested documents are irrelevant.

Based on our review of Scripter's document production and Red F's production, it appears that there were at least some messages to and from Scripter's personal e-mail accounts that are not contained in Scripter's production.  As we discussed during our teleconference, even if Scripter produced all communications currently available to him, some additional information may be in the possession of third party providers and easily obtainable by Scripter. We consider such information to be under the control of Scripter, and any refusal to consent to receiving such information is simply unreasonable.  If necessary, we will move to compel Scripter's consent.

Kate E. Payerle, Esq.
December 30, 2010
Page 2

      If you simply object to any review or searching of the information after release to your firm from the third parties, we would suggest that we discuss this further once we know exactly what is produced by the third parties.

      We believe that the approach that we have suggested takes care of any concerns noted in your motions to quash. Any privacy concerns should be satisfied by your firm's opportunity to screen the documents for irrelevant or privileged communications. In addition, your argument that we should have requested the information from Scripter ignores the fact that we did indeed make such a request, as shown by our discovery requests and your responses containing some amount of personal e-mail and social media communication. We simply want to make sure that we have a full and complete set of Scripter's communications. We have no interest in Scripter's irrelevant private communications or privileged documents.

      If you are agreeable to receipt of the third party documents directly from the providers, we suggest that you withdraw your motions to quash and work with us to convey Scripter's consent to the third parties upon the condition that the third parties produce any documents to your firm. Once we know what content the third parties will provide, we can better determine how to produce only the relevant information with minimal burden and expense to both sides.

Very truly yours,

FITCH, EVEN, TABIN & FLANNERY

Mark A. Borsos

MAB/mmv

cc:    John McDonald

# Ex. 9

## Mark Borsos

| | |
|---|---|
| **From:** | Brenner, Irving M. [IBrenner@mcguirewoods.com] |
| **Sent:** | Thursday, December 23, 2010 3:11 PM |
| **To:** | Mark Borsos; McDonald, John G. |
| **Cc:** | Bledsoe, Louis; Mark Wilson; Kate Cole; Christine Pompa; Edward W. Gray; Payerle, Kate |
| **Subject:** | RE: Bridgetree et al. v. Red F Marketing et al. - Civil Action no 10-CV-228 |

Mark,

I have been out of the office this week and John is out today.  Your attached letter does not reflect our understanding of the parities' discussion and "agreement" during our call on Monday December 20.  We thought that the parties had a reasonable and productive discussion, and we hope that all the parties can move back to our understanding of what was to occur with respect to the "social media" communications and other issues we discussed.  In any event, we plan to respond in full to your letter early next week.

Also, I am told that we have a production of documents that we expect to send out to you on Monday for Tuesday delivery.

Best wishes for a Happy Holiday to all.

Irving

---

**From:** Mark Borsos [mailto:MBorsos@fitcheven.com]
**Sent:** Tuesday, December 21, 2010 10:54 PM
**To:** McDonald, John G.
**Cc:** Bledsoe, Louis; Mark Wilson; Kate Cole; Brenner, Irving M.; Christine Pompa; Edward W. Gray; Payerle, Kate
**Subject:** Bridgetree et al. v. Red F Marketing et al. - Civil Action no 10-CV-228

John,

Please see the attached letter regarding our teleconference yesterday.

Best Regards,
Mark

Mark A. Borsos
FITCH, EVEN, TABIN & FLANNERY | INTELLECTUAL PROPERTY LAW
120 South LaSalle Street; Suite 1600 | Chicago, Illinois 60603
(312) 577-7000 Main | (312) 629-7998 Direct | (312) 577-7007 Fax
mborsos@fitcheven.com  |  www.fitcheven.com

This e-mail transmission, including any attached documents, contains information from the law firm of Fitch, Even, Tabin & Flannery which may be confidential and/or subject to attorney-client privilege.  If you are not an intended recipient, any review, disclosure, copying, or distribution of this transmission, or the taking of any action in reliance on this transmission, is strictly prohibited.  If you have received this e-mail in error, please immediately notify me by return e-mail. Thank you.

## Mark Borsos

| | |
|---|---|
| **From:** | Mark Borsos |
| **Sent:** | Wednesday, January 05, 2011 1:22 PM |
| **To:** | 'Brenner, Irving M.'; McDonald, John G. |
| **Cc:** | Bledsoe, Louis; Mark Wilson; Kate Cole; Christine Pompa; Edward W. Gray; Payerle, Kate |
| **Subject:** | RE: Bridgetree et al. v. Red F Marketing et al. - Civil Action no 10-CV-228 |

Hi Irving,

We did not hear from you last week.  We would like to move the third party discovery issues forward, preferably without involving the district court(s), so any comments regarding protocol for handling the social media and private e-mail communications would be appreciated.

Thanks,
Mark

---

**From:** Brenner, Irving M. [mailto:IBrenner@mcguirewoods.com]
**Sent:** Thursday, December 23, 2010 3:11 PM
**To:** Mark Borsos; McDonald, John G.
**Cc:** Bledsoe, Louis; Mark Wilson; Kate Cole; Christine Pompa; Edward W. Gray; Payerle, Kate
**Subject:** RE: Bridgetree et al. v. Red F Marketing et al. - Civil Action no 10-CV-228

Mark,

I have been out of the office this week and John is out today.  Your attached letter does not reflect our understanding of the parities' discussion and "agreement" during our call on Monday December 20.  We thought that the parties had a reasonable and productive discussion, and we hope that all the parties can move back to our understanding of what was to occur with respect to the "social media" communications and other issues we discussed.  In any event, we plan to respond in full to your letter early next week.

Also, I am told that we have a production of documents that we expect to send out to you on Monday for Tuesday delivery.

Best wishes for a Happy Holiday to all.

Irving

---

**From:** Mark Borsos [mailto:MBorsos@fitcheven.com]
**Sent:** Tuesday, December 21, 2010 10:54 PM
**To:** McDonald, John G.
**Cc:** Bledsoe, Louis; Mark Wilson; Kate Cole; Brenner, Irving M.; Christine Pompa; Edward W. Gray; Payerle, Kate
**Subject:** Bridgetree et al. v. Red F Marketing et al. - Civil Action no 10-CV-228

John,

Please see the attached letter regarding our teleconference yesterday.

Best Regards,
Mark

Mark A. Borsos
FITCH, EVEN, TABIN & FLANNERY | INTELLECTUAL PROPERTY LAW

120 South LaSalle Street; Suite 1600 | Chicago, Illinois 60603
(312) 577-7000 Main | (312) 629-7998 Direct | (312) 577-7007 Fax
mborsos@fitcheven.com  |  www.fitcheven.com

This e-mail transmission, including any attached documents, contains information from the law firm of Fitch, Even, Tabin & Flannery which may be confidential and/or subject to attorney-client privilege.  If you are not an intended recipient, any review, disclosure, copying, or distribution of this transmission, or the taking of any action in reliance on this transmission, is strictly prohibited.  If you have received this e-mail in error, please immediately notify me by return e-mail. Thank you.